STATE OF NORTH CAROLINA v. GENERAL SAM MILLER

No. 67A93

(Filed 3 March 1995)

### 1. Grand Jury § 43 (NCI4th)— foreperson—racial discrimination in selection—motion to quash indictment—timeliness

The trial court did not abuse its discretion in a first-degree murder prosecution by denying defendant's motion to quash the indictment based upon racial discrimination in the selection of the grand jury foreperson where the motion was filed on the first day of the trial. The motion to quash defendant's indictment should have been filed on or before his arraignment date because he was arraigned before the session of court for which his trial was calendared unless he could show good reason to grant relief from the statutory time limitation. Although defendant argued that his current counsel should not be bound by the waivers of past counsel and that he had no notice of the requirement until the N.C. Supreme Court decided *State v. Robinson*, 327 N.C. 346, defendant's current counsel did not file the motion until the first day of trial, almost four years after defendant's arraignment and two years after *Robinson*. The trial court could reasonably have determined that counsel's belief that no action was necessary until the day of trial did not warrant relief from the time limitation. N.C.G.S. § 15A-955, N.C.G.S. § 15A-952.

**Am Jur 2d, Grand Jury §§ 21-25.**

**2. Jury § 141 (NCI4th)— capital murder—jury selection— questions concerning parole**

The trial court did not err in a first-degree murder sentencing hearing by denying defendant's motion to permit questioning of potential jurors regarding their beliefs about parole eligibility.

**Am Jur 2d, Jury §§ 205 et seq.**

**3. Jury § 70 (NCI4th)— capital murder—jury selection— statement informing potential jurors about case—defendant's planned testimony regarding mental disease— omitted**

The trial court did not err during jury selection in a first-degree murder prosecution by not informing the venire that defendant planned to offer expert testimony relating to a mental disease or defect. Although defendant argues that this violates N.C.G.S. § 15A-1213, which requires the trial court to inform the potential jurors about the case prior to jury selection, that statute does not require the trial court to divulge a defendant's theory of the case to the venire. Evidence regarding defendant's mental state at the time of the crime is not an affirmative defense for which defendant bears the burden of proof and the trial court had no statutory duty to inform the jury about the anticipated expert testimony.

**Am Jur 2d, Jury §§ 121 et seq.**

**4. Jury § 92 (NCI4th)— capital murder—jury selection— potential jurors urged to state views clearly—no error**

The trial court did not abuse its discretion during jury selection for a first-degree murder trial by allowing the prosecutor to encourage potential jurors to state their views clearly and without ambiguity. Although defendant argued that this encouragement prevented potential jurors who held ambivalent views from speaking truthfully, the record does not reveal that the prosecutor's request for clarity impaired potential jurors' ability to answer *voir dire* questions truthfully.

**Am Jur 2d, Jury §§ 189 et seq.**

**5. Jury § 226 (NCI4th)— capital murder—jury selection— rehabilitation for equivocal answers—disparity in rehabilitation allowed prosecution and defense**

The trial court did not abuse its discretion during jury selection in a first-degree murder prosecution where the court stated

**STATE v. MILLER**

[339 N.C. 663 (1995)]

that it would allow rehabilitation if a potential juror's answers were equivocal or if it determined that a juror did not understand the question posed and the defendant contended that the court allowed the prosecution to rehabilitate potential jurors but did not grant defendant the same privilege. The record reveals the court's perception that potential jurors did not understand questions posed by the defense; any disparity in the amount of rehabilitation stemmed from a disparity in the complexity of the questions asked. Moreover, even assuming an abuse of discretion, defendant expressed satisfaction with each juror impanelled and did not exhaust his peremptory challenges.

**Am Jur 2d, Jury § 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**6. Jury § 227 (NCI4th)— capital murder—jury selection— excusal for cause—opposition to death penalty— rehabilitation**

The trial court did not err during jury selection for a first-degree murder prosecution by excusing two jurors for cause who had first unequivocally stated that they could not vote for the death penalty under any circumstances, stated during rehabilitation that they could set aside their personal beliefs and follow the court's instructions or that they could think of circumstances where they would vote for the death penalty, and then said when asked by the prosecutor or the court that they could not vote for the death penalty. Both potential jurors clearly expressed several times that they could not vote for the death penalty under any circumstances and the court properly could have concluded that subsequent equivocation arose out of their desire to perform their duties as jurors.

**Am Jur 2d, Jury § 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**7. Jury § 123 (NCI4th)— capital murder—jury selection— questions concerning particular mitigating circumstances—not allowed**

The trial court did not abuse its discretion during jury selection in a first-degree murder prosecution by denying defendant's motion to ask two potential jurors if they could consider impaired capacity arising from drug use as a mitigating circumstance and to ask potential jurors whether they thought people could change their lives for the better. The questions defendant sought to ask here constituted improper attempts to stake out jurors, not means of determining whether they could follow the law.

**Am Jur 2d, Jury §§ 208 et seq.**

**8. Jury § 154 (NCI4th)— capital murder—jury selection— questions to reveal bias for death penalty—excluded**

The trial court did not err during jury selection in a first-degree murder prosecution by sustaining the State's objections to questions intended to reveal potential jurors' latent biases in favor of the death penalty. Overly broad questions or those calling for policy decisions are impermissible under *State v. Conner*, 335 N.C. 618. The first of defendant's questions here is substantially similar to the *Conner* question, the second has no reasonable expectation of revealing information bearing upon the potential juror's qualifications to serve as an impartial juror, and the third asked for a policy decision.

**Am Jur 2d, Jury §§ 208 et seq.**

**9. Jury § 154 (NCI4th)— capital murder—jury selection— whether convicted defendant should automatically suffer death—question excluded—no prejudicial error**

There was no prejudicial error in a first-degree murder prosecution where the trial court sustained the State's objection to defendant's question as to whether a person convicted in a case such as this should automatically be put to death. Assuming error, it was harmless beyond a reasonable doubt because defendant was allowed to ask both of these jurors whether they could under any circumstances vote for a life sentence, defendant exercised peremptory challenges to excuse both of these potential jurors, and defendant did not exhaust his peremptory challenges.

**Am Jur 2d, Jury §§ 208 et seq.**

**10. Homicide § 244 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence**

The trial court did not err by submitting first-degree murder to the jury where defendant contended that the evidence of premeditation and deliberation was insufficient but the record revealed substantial evidence that defendant was not provoked by the victim in that defendant admitted that he shot the victim for refusing to hand over the money from the cash register and, although he now argues that he was provoked by a racial remark, presented no evidence beyond pure speculation that the victim's racial statement provoked him; defendant's conduct before the murder supports an inference that he had anticipated and decided how to resolve a possible confrontation with his robbery targets; and defendant's calm and deliberate conduct as he robbed the victim after the murder also supports an inference of premeditation and deliberation. Finally, the facts of this case are similar to those of *State v. Williams*, 319 N.C. 73.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**11. Criminal Law § 1315 (NCI4th)— capital murder—sentencing hearing—mitigating evidence—defendant's character**

Any error was harmless beyond a reasonable doubt in a first-degree murder sentencing hearing where the trial court sustained the State's objection to defendant's question to defendant's psychotherapist concerning the witness's opinion of defendant as a friend and defense counsel concluded his questioning of the witness without an offer of proof. Even assuming that the issue was properly preserved for review, the jury heard testimony from numerous witnesses, including defendant's sister and his minister, about his good character, his quest for self-improvement while incarcerated, and his leadership role within his family. The excluded testimony would have been merely cumulative.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**12. Criminal Law § 447 (NCI4th)—capital murder—sentencing—prosecutor's argument—jury visualizing itself as victim**

The trial court did not err in a first-degree murder sentencing hearing by overruling defendant's objection to the prosecutor's

argument that the jurors should visualize themselves as the murder victim. The argument related to the nature of the crime and neither misstated nor manipulated the evidence.

**Am Jur 2d, Criminal Law §§ 648 et seq.**

**13. Criminal Law § 1357 (NCI4th)— capital murder—sentencing—mitigating circumstances—cocaine withdrawal—mental or emotional disturbance not submitted**

The trial court did not err in a first-degree murder sentencing hearing by not submitting the statutory mitigating circumstance that defendant was under the influence of a mental or emotional disturbance when he committed the crime. Although defendant argued that he suffered from cocaine and opiate withdrawal, which is a defined psychiatric disorder, drug withdrawal stemming from voluntary intoxication does not qualify as a mental or emotional disturbance for purposes of N.C.G.S. § 15A-2000(f)(2).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.**

**14. Criminal Law § 1357 (NCI4th)— capital murder—sentencing—mitigating circumstances—mental or emotional disturbance—racial slur**

The trial court did not err during a first-degree murder sentencing hearing by not submitting the statutory mitigating circumstance of mental or emotional disturbance where defendant contended that a racial slur provoked him to shoot, but he told police in his statement that he shot the victim because the man tried to stop him from getting money for drugs. This evidence reveals that defendant committed the murder for money, not as a result of provocation to which he was abnormally susceptible. N.C.G.S. § 15A-2000(f)(2).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**15. Criminal Law § 1360 (NCI4th)— capital murder—sentencing—mitigating circumstances—impaired capacity—drug withdrawal**

The trial court did not err in a first-degree murder sentencing hearing by refusing to submit the impaired capacity mitigating circumstance where defendant relied on evidence of drug withdrawal to show impairment. The record contains no evidence that defendant was impaired by drugs or withdrawal therefrom at the time of the murder or that any symptoms of withdrawal he may have experienced at that time impaired his capacity. N.C.G.S. § 15A-2000(f)(6).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.**

**16. Criminal Law § 1363 (NCI4th)— capital murder—sentencing—mitigating circumstances—no harm to witnesses**

The trial court did not err in a first-degree murder sentencing hearing by not submitting the nonstatutory mitigating circumstance that defendant neither threatened nor harmed eyewitnesses to the crime. Mitigating circumstances focus on positive aspects of a defendant's character or behavior; the absence of an aggravating circumstance or bad conduct cannot constitute a mitigating circumstance. The categories of positive behavior recognized as mitigating do not include a defendant's failure to harm eyewitnesses.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**17. Criminal Law § 1322 (NCI4th)— capital murder—sentencing—instructions—parole eligibility**

The trial court did not err during a first-degree murder sentencing hearing by refusing to instruct the jury regarding defendant's potential to be paroled if given a life sentence. Parole eligibility is not relevant during jury selection, closing argument, or jury deliberation in a capital sentencing proceeding; *Simmons v. South Carolina*, 129 L. Ed. 2d 133, does not require that N.C. precedents on the issue be overruled where defendant remains eligible for parole if given a life sentence, and N.C.G.S. § 15A-2002, effective 1 October 1994, which requires that a sentence of life imprisonment shall be life without parole and that the jury be so instructed, does not entitle defendant to a new sen-

tencing hearing. Under the law applicable at the time of defendant's trial, the court was neither required nor allowed to give an instruction on the issue of parole eligibility.

**Am Jur 2d, Trial § 1441.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

18. **Criminal Law § 680 (NCI4th)— capital murder—sentencing—peremptory instructions**

The trial court did not err during a first-degree murder sentencing hearing by refusing to give peremptory instructions on allegedly uncontroverted statutory and nonstatutory mitigating circumstances where it was held elsewhere that the court did not err in refusing to submit these circumstances to the jury.

**Am Jur 2d, Trial §§ 1441, 1444.**

19. **Criminal Law § 1348 (NCI4th)— capital murder—sentencing instructions—mitigating circumstances**

The trial court did not err in a first-degree murder sentencing hearing by refusing to give defendant's requested peremptory instruction on the ground that it required the jury to accord weight to nonstatutory circumstances. The instruction failed to inform jurors that they could accord no weight to proven nonstatutory circumstances.

**Am Jur 2d, Trial §§ 1441, 1444.**

20. **Criminal Law § 1323 (NCI4th)— capital murder—sentencing—instructions—consideration of mitigating circumstances found by other jurors**

The trial court did not err in a first-degree murder sentencing hearing by failing to instruct the jury that it must consider any mitigating circumstance found by a juror. There is no constitutional requirement that a juror must consider a mitigating circumstance found by another juror to exist; what is constitutionally required is that jurors be individually given the opportunity to consider and give weight to whatever mitigating evidence they deem to be valid.

**Am Jur 2d, Trial §§ 1441, 1444.**

**21. Criminal Law § 1363 (NCI4th)— capital murder—sentencing—instructions—nonstatutory mitigating circumstances**

The trial court did not err in a first-degree murder sentencing hearing by instructing the jury that it could consider nonstatutory mitigating circumstances it found to exist and to have mitigating value when weighing aggravating and mitigating circumstances. Although defendant contended that this instruction improperly allowed jurors to decide that a circumstance existed but had no mitigating value, nonstatutory mitigating circumstances, unlike their statutory counterparts, do not have mitigating value as a matter of law.

**Am Jur 2d, Trial §§ 1441, 1444.**

**22. Criminal Law § 1373 (NCI4th)— first-degree murder—death sentence—not disproportionate**

A sentence of death for a first-degree murder was not disproportionate where the evidence supported the three aggravating factors found, the record does not suggest that the sentence was imposed under passion, prejudice, or any arbitrary factor, and, comparing this case to similar cases in which the death penalty was imposed and considering both the crime and the defendant, the death penalty was not disproportionate or excessive. This case is more egregious than others involving a robbery-murder in which the death penalty was held proportionate.

**Am Jur 2d, Criminal Law § 628.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Barnette, J., at the 11 January 1993 Criminal Session of Superior Court, Robeson County, on a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 11 January 1995.

*Michael F. Easley, Attorney General, by William N. Farrell, Jr., and William P. Hart, Special Deputy Attorneys General, for the State.*

*Henderson Hill, Director, North Carolina Resource Center, by Marshall L. Dayan, Senior Staff Attorney, and Bruce T. Cunningham, Jr., for defendant-appellant.*

WHICHARD, Justice.

In 1986 defendant was convicted of the first-degree murder of Earl Allen, the owner and operator of City Jewelers in Robeson County, and sentenced to death. On defendant's first appeal, we ordered a new trial. *See State v. Hucks & Miller*, 323 N.C. 574, 374 S.E.2d 240 (1988). At his second trial in 1993, defendant again was convicted of the first-degree murder of Earl Allen and sentenced to death. He appeals from this second conviction and sentence. We find no prejudicial error in the guilt/innocence and sentencing phases, and we conclude that the sentence of death is not disproportionate.

The State's evidence tended to show that defendant arrived in Fayetteville, North Carolina, on 29 September 1985 in a stolen car. He ran out of money and on 4 October began looking for a place to rob, armed with a .32-caliber pistol and accompanied by Kenneth Hucks, his codefendant at the first trial. On 5 October defendant spotted Allen's jewelry store in St. Pauls and stated, "there is our easy money." At approximately 3:45 p.m. defendant and Hucks parked the car and entered the store. Defendant demanded the money from Allen's cash register. When Allen refused, defendant raised his pistol and fired one shot into Allen's forehead. Defendant later told an investigator that he shot Allen for trying "to stop him from getting the money." After Allen fell to the floor, defendant removed money, a wallet, and a set of keys from Allen's pockets. Hucks stole some watches as defendant took money from the cash register. On their way out, defendant pointed a gun at, but did not shoot, a person entering the store. Allen died six days later, without regaining consciousness, as a result of the gunshot wound to his head.

Defendant and Hucks divided the proceeds of the robbery on their way back to Fayetteville. Defendant used his share—$800.00—to buy drugs. Police officers apprehended defendant, after a high-speed chase which ended in a multiple-car accident, early in the morning on 6 October. They recovered a gun and some watches from the stolen car driven by defendant. A ballistics expert from the State Bureau of Investigation testified that the bullet removed from Allen's brain matched the gun found in the car.

Defendant was transported by ambulance from the scene of the accident to Southeastern General Hospital, accompanied by then-Assistant Chief of Police Tommy Hagens. Chief of Police James Sanderson, SBI Agent Lee Sampson, and Hagans interrogated defendant in the hospital and continued the questioning in the Robeson

County Sheriff's Office after defendant was released from the hospital. At the Sheriff's Office, defendant waived his *Miranda* rights and then confessed that he shot Allen; Agent Sampson recounted defendant's confession at trial. After giving his statement, defendant helped the police locate Hucks and provided information used to obtain a search warrant. Police recovered much of the property stolen from City Jewelers as a result of defendant's assistance.

Defendant introduced no evidence during the guilt/innocence phase. The jury returned a verdict of guilty under the theory of premeditation and deliberation as well as the felony murder rule.

During the sentencing phase, the State introduced evidence that defendant, armed with a pistol, had robbed the Quality Inn in Fayetteville on 3 October 1985 and Martin's Quick Service in Fayetteville on 5 October 1985. The State also introduced evidence that defendant had been convicted of third-degree robbery in Connecticut in July 1982.

Defendant offered evidence at sentencing tending to show that while in the emergency room at Southeastern General he admitted to drug abuse and that a hospital nurse observed needle tracks on both of defendant's arms. Additionally, defendant's hospital record shows that on the afternoon of 6 October he requested medicine to treat what he called drug withdrawal.

Defendant's social worker, Beth McAllister, testified about her work with defendant. She stated that defendant remained close to his family in Connecticut despite his incarceration and that he nurtured and supported his siblings. Defendant began smoking marijuana at age twelve or thirteen and began to use harder drugs at age fourteen after his father died. Defendant had developed a routine in jail which included reading the newspaper and the Bible, educating himself, and praying.

Defendant's sister, June Lewis, testified that defendant was devastated by their father's death and that he did whatever he could to help her. For example, he talked to her sons about their behavior, drove her to work when necessary, and took care of her family when she was in the hospital for back surgery. Defendant's nephew, Walter Miller, Jr., testified that he talked to defendant about many things, including getting good grades and staying in school.

Elder Thomas Dockery, defendant's minister since 1986, testified that defendant had embraced Christianity and made an effort to turn

his life around. He testified about defendant's good relationship with officers at Central Prison and about improvements in his speech and personal grooming.

Finally, Dr. George Cliette, a psychologist, testified that he performed several tests on defendant. The results revealed that defendant's intelligence is below average. He reads at a twelfth grade level but has deficient math and spelling skills. Personality tests showed that defendant acts impulsively, has difficulty processing information, and has a moderately high addictive personality.

The jury found all three aggravating circumstances submitted: (1) that defendant had previously been convicted of a felony involving the use or threat of violence; (2) that the murder was committed for pecuniary gain; and (3) that the murder was part of a course of conduct including the commission of other crimes of violence against other persons. The trial court submitted one statutory and thirteen nonstatutory mitigating circumstances. The jury found the statutory circumstance that defendant aided in the apprehension of another capital felon and ten of the nonstatutory circumstances. The jury then recommended a sentence of death, and the court sentenced defendant accordingly.

PRETRIAL PHASE

**[1]** Defendant first assigns as error the trial court's denial of his motion to quash his murder indictment on the basis of racial discrimination in the selection of the grand jury foreman. Such discrimination denies a black defendant the protections of Article I, Sections 19 and 26 of the North Carolina Constitution. *State v. Pigott*, 331 N.C. 199, 415 S.E.2d 555 (1992); *State v. Robinson*, 327 N.C. 346, 361, 395 S.E.2d 402, 411 (1990); *State v. Cofield*, 320 N.C. 297, 357 S.E.2d 622 (1987). The trial court denied the motion, which was filed on the first day of trial, on the grounds that it was time-barred and that defendant presented no valid reason to waive the time bar.

In *Robinson*, we implicitly assumed that motions like defendant's, known as *Cofield* motions, are motions to dismiss an indictment based on a challenge to the array under N.C.G.S. § 15A-955(1) because they in effect challenge the grand jury which indicted the defendant. *Robinson*, 327 N.C. at 361, 395 S.E.2d at 411. We now expressly adopt that position. N.C.G.S. § 15A-952 provides in pertinent part that motions to dismiss under N.C.G.S. § 15A-955 "must be made within the time limitations stated in subsection (c) unless the

court permits filing at a later time." N.C.G.S. § 15A-952(b)(4) (Supp. 1994). Subsection (c) of that statute provides:

> Unless otherwise provided, the motions listed in subsection (b) must be made at or before the time of arraignment if arraignment is held prior to the session of court for which the trial is calendared. If arraignment is to be held at the session for which trial is calendared, the motions must be filed on [sic] or before five o'clock P.M. on the Wednesday prior to the session when trial of the case begins.

Defendant was arraigned for the second time on 17 January 1989, well before the session of court for which his trial was calendared. Thus a motion to quash his indictment should have been filed on or before 17 January 1989. Unless defendant presented the trial court good reason to grant relief from the statutory time limitation, he waived his *Cofield* rights. N.C.G.S. § 15A-952(e). Defendant contends his motion should not have been time-barred because his current counsel did not represent him at the time of his arraignment and should not be bound by waivers by prior counsel. He also argues he had no notice that *Cofield* motions constituted challenges to an array under N.C.G.S. § 15A-955 until this Court decided *Robinson*. Therefore, he contends, his inaction should not constitute a waiver. We disagree.

The trial court did not bind new defense counsel by previous counsel's waiver. The court's ruling was based on counsel's failure to file the motion until the first day of trial. Defendant's new counsel began to represent him on 3 July 1989, seven months after his second arraignment. Counsel could have filed a *Cofield* motion at that time and argued then for relief from the time bar on the grounds that he should not be bound by an error of prior counsel. Defense counsel also could have filed the motion on 8 October 1992 when he argued a motion for change of venue. Finally, he could have filed the motion as soon as *Robinson* was published, as that case provided clear notice that N.C.G.S. § 15A-952(c) applied to *Cofield* motions. Instead, he waited until the first day of trial—almost four years after defendant's arraignment and more than two years after publication of the opinion in *Robinson*. Defendant presented no grounds for relief from the time bar other than his counsel's belief that no action was necessary until the day of trial. The trial court could reasonably have determined that this belief did not warrant relief from the time limitation. We cannot

conclude that the court's ruling constitutes an abuse of discretion. This assignment of error is overruled.

**[2]** Defendant also assigns as error the trial court's denial of his motion to permit questioning of potential jurors regarding their beliefs about parole eligibility. We have consistently "held that evidence about parole eligibility is not relevant in a capital sentencing proceeding because it does not reveal anything about defendant's character or record or about any circumstances of the offense." *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994); *see also State v. Green*, 336 N.C. 142, 157-58, 443 S.E.2d 14, 23 (1994). As we explained in *Payne*, the recent decision in *Simmons v. South Carolina*, — U.S. —, 129 L. Ed. 2d 133 (1994), does not affect our position on this issue when, as here, the defendant remains eligible for parole if given a life sentence. *Payne*, 337 N.C. at 516-17, 448 S.E.2d at 99-100. This assignment of error is overruled.

JURY SELECTION

**[3]** Defendant presents numerous assignments of error regarding jury selection. First, he contends that the trial court erred by failing to inform the venire that defendant planned to present expert testimony relating to a mental disease or defect affecting his mental state at the time of the crime. He argues this omission violated the statute that requires a trial court to make a statement informing potential jurors about the case prior to jury selection. N.C.G.S. § 15A-1213 (1988). In this statement the court must identify the parties and counsel for each side and briefly state the charge against defendant, the date of the alleged offense, the victim's name, the defendant's plea, "and any affirmative defense of which the defendant has given pretrial notice." *Id.* The trial court here made the required statement but did not mention defendant's intent to introduce expert testimony about his mental status. Defendant concedes that such evidence did not constitute an affirmative defense but contends we should recognize it as such for purposes of section 15A-1213.

N.C.G.S. § 15A-1213 does not require a trial court to divulge a defendant's theory of the case to the venire. Evidence regarding defendant's mental state at the time of the crime might be found to rebut the State's proof of premeditation and deliberation, but it is not an affirmative defense for which defendant bears the burden of proof. Thus the trial court had no statutory duty to inform the jury about the anticipated expert testimony. The court properly fulfilled its duty

under section 1213 to orient the venire to the case. This assignment of error is overruled.

**[4]** Next defendant contends the trial court improperly allowed the prosecutor to encourage potential jurors to state their views clearly and without ambiguity. He argues such encouragement prevented potential jurors who actually held ambivalent views from speaking truthfully during *voir dire*. This contention has no merit. Lawyers face a difficult task when attempting to ascertain whether potential jurors hold biases for or against the death penalty that would impair the performance of their duties. *See Wainwright v. Witt*, 469 U.S. 412, 424-25, 83 L. Ed. 2d 841, 852 (1985). Clear answers to their questions ease this difficulty. The record does not reveal that the prosecutor's request for clarity impaired potential jurors' ability to answer *voir dire* questions truthfully. It simply urged them to enunciate their views in an understandable manner. The trial court, which is charged with supervising the examination of potential jurors, has "broad discretion in controlling the extent and manner of" *voir dire. State v. Brown*, 315 N.C. 40, 55, 337 S.E.2d 808, 820 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). Based on the record, we cannot say the court here abused its discretion when it overruled defendant's objections to the State's requests for clarity from potential jurors.

**[5]** Defendant next argues the trial court improperly treated the prosecution and defendant differently in ruling on challenges for cause based on prospective jurors' beliefs regarding the death penalty. He contends the trial court allowed the prosecution to rehabilitate potential jurors—despite a decision early in *voir dire* not to allow rehabilitation—but did not grant defendant the same privilege. This created, according to defendant, a jury with a large number of death-qualified jurors and few life-qualified jurors.

The trial court stated that it would allow rehabilitation if a juror's answers were equivocal or if it determined that a juror did not understand the question posed. The trial court can best determine a juror's confusion or lack of understanding. The record reveals the court's perception that potential jurors did not understand questions posed by the defense: "If I'm convinced that a juror fully understands what you're talking about . . . then that's one thing. But I'm . . . sitting there . . . watching. Not only listening, but watching the particular juror, and the confusion on their face when the questions are being asked of

them [by the defense]—they do not understand." We conclude that any disparity in the amount of rehabilitation the court allowed stemmed from a disparity in the complexity of the questions asked by each side. We cannot conclude based on this record that the court abused its discretion when it permitted or precluded rehabilitation. Even assuming an abuse of discretion, "to establish reversible error [relating to *voir dire*], a defendant must show prejudice in addition to a clear abuse of discretion on the part of the trial court." *State v. Parks*, 324 N.C. 420, 423, 378 S.E.2d 785, 787 (1989). Defendant expressed satisfaction with each juror impanelled and did not exhaust his peremptory challenges. He thus cannot show prejudice from the court's rulings on rehabilitation. This assignment of error is overruled.

**[6]** In his next assignment of error, defendant contends the trial court erred by excusing two qualified potential jurors for cause during *voir dire*. He argues that the potential jurors unequivocally stated they could set aside their personal beliefs concerning the death penalty and follow the court's instructions. Defendant argues that they were therefore qualified to sit on the jury and that he is entitled to a new trial because the trial court erred by excluding them.

Prospective juror Hailey stated twice on *voir dire* that she could not vote for the death penalty under any circumstances. During defendant's attempted rehabilitation, however, Hailey indicated she could set aside her personal views and make a sentencing decision based on the law. The trial court then asked, "Ms. Hailey, under any circumstances could you render a verdict that meant the death penalty?" Hailey answered, "No." The court allowed the prosecution's challenge for cause.

Similarly, prospective juror Murray told the prosecutor during *voir dire* that he could not vote for the death penalty under any circumstances because of his personal beliefs. The prosecution challenged Murray for cause. Defense counsel then asked, "is there any situation that you can think of in which the death penalty would be the appropriate punishment—and in which you could serve on a jury and vote for it?" Murray answered, "Yes." The prosecutor then asked Murray a few more questions, including, "You just couldn't vote for [the death penalty] for any . . . case; is that right?" Murray nodded affirmatively, and the court excused him for cause.

A trial court may excuse for cause a prospective juror whose views regarding the death penalty would prevent or substantially

impair the performance of his duty as a juror. *State v. Yelverton,* 334 N.C. 532, 543, 434 S.E.2d 183, 189 (1993). We "must defer to the trial court's judgment concerning whether the prospective juror would be able to follow the law impartially" because a prospective juror's bias for or against the death penalty cannot always be proven with unmistakable clarity. *State v. Davis,* 325 N.C. 607, 624, 386 S.E.2d 418, 426 (1989), *cert. denied,* 496 U.S. 905, 110 L. Ed. 2d 268 (1990). In *State v. Oliver,* 302 N.C. 28, 39, 274 S.E.2d 183, 191 (1981), we recognized that excusal for cause is proper when a juror expresses a "specific inability to impose the death penalty under any circumstances." We noted in *Yelverton* that a potential juror's equivocation on the subject of the death penalty may stem from a "conscientious desire to do his duty as a juror and to follow the court's instructions in the face of recognizing his personal inability to impose the death penalty." *Yelverton,* 334 N.C. at 544, 434 S.E.2d at 190. Here both Hailey and Murray clearly expressed several times that they could not vote for the death penalty under any circumstances. The trial court properly could have concluded that subsequent equivocation arose out of their desire to perform their duties as jurors according to the dictates of the law. This assignment of error is overruled.

[7] In his next assignment of error, defendant argues that the trial court improperly precluded him from determining whether potential jurors could follow the law. Defendant filed a motion seeking to ask two questions of potential jurors:

> If the defendant is convicted of first-degree murder and we proceed to the sentencing phase of the trial and sufficient evidence is presented to convince you that, because of drug abuse, at the time of the offense the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, could you, following the instructions of the Court, consider this as a mitigating factor? By contrast, do you consider drug use such an evil that you could not, under any circumstances, consider the defendant's impaired capacity on the basis of drug use as a mitigating circumstance?

The trial court denied the motion. Defendant also sought permission to ask potential jurors whether they thought people could change their lives for the better. The court refused to allow this question, and sustained objections when it was asked. Defendant contends these rulings improperly prevented him from ascertaining potential jurors' ability to follow the law.

STATE v. MILLER

[339 N.C. 663 (1995)]

We have consistently held that a defendant may not use *voir dire* to stake out potential jurors by asking whether they could consider specific mitigating circumstances during the sentencing phase. *See, e.g., State v. Skipper,* 337 N.C. 1, 19-24, 446 S.E.2d 252, 261-64 (1994), *cert. denied,* — U.S. —, — L. Ed. 2d —, 63 U.S.L.W. 3563 (1995); *State v. Hill,* 331 N.C. 387, 404, 417 S.E.2d 765, 772 (1992), *cert. denied,* — U.S. —, 122 L. Ed. 2d 684 (1993), *reh'g denied,* — U.S. —, 123 L. Ed. 2d 503 (1993); *Davis,* 325 N.C. at 621, 386 S.E.2d at 425. General questions, such as whether a potential juror could follow instructions regarding the consideration of mitigating circumstances, are permissible. *See Skipper,* 337 N.C. at 20, 446 S.E.2d at 261-62. The questions defendant sought to ask here, however, constituted improper attempts to stake out jurors, not means of determining whether they could follow the law. We thus conclude that the trial court did not abuse its discretion by denying defendant's motion or by refusing to allow defendant to ask potential jurors whether they could consider particular mitigating circumstances.

**[8]** Defendant also argues in this assignment of error that the trial court improperly prevented him from asking questions intended to unveil potential jurors' latent biases in favor of the death penalty. For example, the court sustained the prosecution's objections to the following questions: "Do you believe that if a person takes a life unlawfully that he should pay for it with his own life?" "Do you think the defendant should have to prove to you why he should receive a life sentence or do you think the State should have to prove to you as to why he should receive the death sentence?" "Do you believe that some murders are worse than others and more deserving of the death penalty?" Defendant contends these questions properly attempted to determine whether potential jurors could follow the law.

In *State v. Conner,* 335 N.C. 618, 644-45, 440 S.E.2d 826, 840-41 (1994), we held that overly broad questions or those calling for policy decisions are impermissible. We agreed with the trial court there that the question "[d]o you feel that the death penalty is the appropriate penalty for someone convicted of first-degree murder?" was impermissible. The first of defendant's questions listed above is substantially similar to the *Conner* question and thus was properly disallowed. Defendant's query as to whether the burden of proof was fair "has no reasonable expectation of revealing pertinent information bearing upon the potential juror's qualifications to serve as an impartial juror." *Id.* at 632, 440 S.E.2d at 834. Finally, the third question was also improper under *Conner* because it asked for a policy decision.

We therefore conclude that the trial court properly sustained the State's objections to all three questions.

**[9]** In his final argument under this assignment of error, defendant contends the trial court erred by sustaining the State's objection to the question, "would you automatically believe or feel that the person who is convicted of first degree murder in the course of a robbery as in this . . . case should automatically be put to death?" He argues that precluding two potential jurors from answering this question violated his rights under *Morgan v. Illinois*, —- U.S. —-, —-, 119 L. Ed. 2d 492, 503-06 (1992), where the United States Supreme Court held that a defendant must be allowed to ask a potential juror whether he would automatically or always vote for the death penalty following a defendant's conviction of a capital offense.

Assuming *arguendo* that a *Morgan* error occurred, we conclude it was harmless beyond a reasonable doubt. First, defendant was allowed to ask both potential jurors whether they could, under any circumstances, vote for a life sentence where a person had been convicted of first-degree murder during a robbery. Defendant thus acquired the information that *Morgan* questions are designed to elicit. Second, defendant exercised peremptory challenges to excuse both potential jurors; he did not exhaust his peremptory challenges and thus was not forced to accept an undesirable juror as a result of excluding these two potential jurors. This assignment of error is overruled.

GUILT/INNOCENCE PHASE

**[10]** In defendant's next assignment of error, he argues that the trial court erred by submitting to the jury the charge of first-degree murder on the theory of premeditation and deliberation. Defendant contends the evidence of premeditation and deliberation was insufficient to support its submission.

To determine whether a defendant committed his crime with premeditation and deliberation, evidence must exist that he "thought about the act for some length of time, however short, before the actual killing; no particular amount of time is necessary to illustrate that there was premeditation." *State v. Sierra*, 335 N.C. 753, 758, 440 S.E.2d 791, 794 (1994). In making this determination, we must view the evidence in a light most favorable to the State. *Id.* at 757, 440 S.E.2d at 794.

STATE v. MILLER

[339 N.C. 663 (1995)]

The State usually proves premeditation and deliberation by circumstantial evidence. *Id.* at 758, 440 S.E.2d at 794; *State v. Ginyard*, 334 N.C. 155, 158, 431 S.E.2d 11, 13 (1993). This Court has often "enumerated some of the circumstances which tend to support a proper inference of premeditation and deliberation." *Ginyard*, 334 N.C. at 158, 431 S.E.2d at 13; *see, e.g., Sierra*, 335 N.C. at 758, 440 S.E.2d at 794; *State v. Olson*, 330 N.C. 557, 565, 411 S.E.2d 592, 596 (1992). Defendant contends that application of such factors to this case reveals that the State failed to present evidence sufficient to support an inference of premeditation and deliberation. We disagree.

Two of the frequently enumerated circumstances apply in this case:

First, a lack of provocation by the victim supports an inference of premeditation and deliberation. *Olson*, 330 N.C. at 565, 411 S.E.2d at 596. The record reveals substantial evidence that defendant here was not provoked by the victim. In defendant's statement to the police, he admitted that he shot the victim for refusing to hand over the money from the cash register. Defendant gave no other reason for the murder, though he now argues that he was provoked into shooting when the victim called him a "black son-of-a-bitch." He presented no evidence beyond pure speculation to show that the victim's statement provoked him or to contradict his earlier statement.

Second, a defendant's conduct before and after the killing supports an inference of premeditation and deliberation. *Id.* Evidence tending to show that a defendant carried a deadly weapon prior to committing a murder with it supports an inference that "he had anticipated a possible confrontation and given some forethought to how he would deal with a confrontation." *Ginyard*, 334 N.C. at 159, 431 S.E.2d at 13; *see also State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985). Defendant here carried a loaded .32-caliber pistol for several days prior to the robbery and murder. He threatened two persons with this weapon during two armed robberies just days before he killed Allen with it. These facts support an inference that he had anticipated and decided how to resolve a possible confrontation with his robbery targets.

Defendant's conduct after he shot the victim also supports an inference of premeditation and deliberation. While Allen lay bleeding on the floor, defendant removed money, a wallet, and a set of keys from Allen's pockets. He then removed the money from the cash reg-

ister. This calm and deliberate conduct indicates defendant committed the murder with premeditation and deliberation.

Finally, the facts of this case are similar to those of *State v. Williams*, 319 N.C. 73, 80-81, 352 S.E.2d 428, 433 (1987). There we concluded the trial court properly submitted the issue of premeditation and deliberation to the jury based on the following evidence: a convenience store was robbed; during the robbery an employee of the store was killed by a blast from a twelve-gauge shotgun; a cash register and cash were removed from the premises; parts of the register and a stolen car were found seven and one-half miles from the store; the car contained two twelve-gauge shotgun shells, one fired and one unfired; police found a sawed-off, twelve-gauge shotgun in the defendant's home; and the defendant confessed he shot the employee to avoid being identified. We held that these facts "constituted substantial evidence of . . . first-degree murder committed with premeditation and deliberation." *Id.* The only material difference here is the defendant's motive for shooting the employee—defendant shot Allen for refusing to hand over the money as requested, not to eliminate a witness. This variation does not require a different result. We conclude that, as in *Williams*, sufficient evidence of premeditation and deliberation existed for the trial court to submit the charge of first-degree murder to the jury on that theory.

SENTENCING PHASE

[11] Defendant next argues that the trial court erred by excluding relevant mitigating evidence during the sentencing proceeding. Beth McAllister, a psychotherapist in Raleigh, testified on defendant's behalf. She had worked with defendant for about a year beginning in October 1991, meeting or speaking with him at least once a week. McAllister testified primarily about defendant's family life and his conduct in prison. Defense counsel asked McAllister, "Tell the jury what you think of [defendant] as a . . . friend"; the trial court sustained the prosecutor's objection before McAllister could answer. Counsel asked no further questions of McAllister. Defendant now contends the trial court erred when it sustained the objection because it barred important character evidence from the sentencing proceeding in violation of *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), and its progeny.

Defense counsel concluded his direct examination of McAllister upon the court's ruling. He made no offer of proof indicating how McAllister would have responded to the question; defendant there-

fore failed to preserve this issue for review. "[T]o preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985). Further, "the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred." *Id.*

Even assuming *arguendo* that defendant properly preserved this issue for review, we conclude that any error was harmless beyond a reasonable doubt. The jury heard testimony from numerous witnesses, including defendant's sister and his minister, about defendant's good character, his quest for self-improvement while incarcerated, and his leadership role within his family. The excluded testimony thus would have been merely cumulative. This assignment of error is therefore overruled.

[12] In another assignment of error, defendant contends he was denied a fair sentencing proceeding because the trial court overruled his objections to the prosecutor's inflammatory and prejudicial closing argument. Defendant argues that the prosecutor improperly asked the jurors to visualize themselves as the murder victim. He is entitled to a new sentencing proceeding, he argues, because the improper argument appealed to the jury's passions and influenced it to reject a sentence of life imprisonment. Defendant focuses on the following statements:

> You [jurors] haven't done your job if you weren't right with [the victim] in the store on October 5, 1985 when he waited on customers [objection overruled] and he took the calls several times that day with his wife. . . . And you haven't done your job, ladies and gentlemen, if you're not right there with Mr. Earl Allen on October 5, 1985 [objection overruled] when the defendant, Sam Miller, seated right over at that table came in toting that pistol [or] when General Sam Miller raises up that pistol and points it— point blank range at Mr. Allen's head, pulls the trigger and you feel that hot ball of lead burn into his brain, ladies and gentlemen [objection overruled]. . . . And you haven't done it if you're . . . not laying there with him on the floor as the defendant [objection overruled] . . . is going through his pockets, ladies and gentlemen. . . . [Defendant is] going through [the victim's] pockets and as his very life blood is flowing out of his body . . . [defendant] is going

through his pockets and probably rolling him over so he can get to the rest of his pockets.

In *State v. Artis,* 325 N.C. 278, 324, 384 S.E.2d 470, 496 (1989), *sentence vacated on other grounds,* 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand,* 329 N.C. 679, 406 S.E.2d 827 (1991), the murder victim died by manual strangulation. During closing argument at sentencing, the prosecutor asked the jurors to hold their breath for as long as they could during a four-minute stretch of time so they could " 'understand . . . the dynamics of manual strangulation.' " *Id.* The defendant objected, but the trial court allowed the argument. On appeal, we found no error, concluding that an argument "[u]rging the jurors to appreciate the 'circumstances of the crime' " is not improper during the penalty phase of a trial. *Id.* at 325, 384 S.E.2d at 497. Likewise, the prosecutor's argument here related to the nature of the crime, which is "the touchstone for propriety in sentencing arguments." *State v. Brown,* 320 N.C. 179, 202-03, 358 S.E.2d 1, 17, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987). It neither misstated nor manipulated the evidence. We therefore conclude that the argument was not improper and that the trial court did not err by overruling defendant's objections.

[13] Defendant also assigns as error the trial court's refusal to submit the statutory mitigating circumstance that defendant was under the influence of a mental or emotional disturbance when he committed the crime. *See* N.C.G.S. § 15A-2000(f)(2) (Supp. 1994). He contends the evidence showed that he suffered from cocaine and opiate withdrawal—a psychiatric disorder defined in the *Diagnostic and Statistical Manual of Mental Disorders, Third Edition—Revised* (1987)—at the time of the murder. He also contends this disorder made him more vulnerable to the provocation that led him to shoot the victim. Thus, he argues, the trial court should have submitted the circumstance, and its failure to do so entitles him to a new sentencing proceeding. We disagree.

A trial court must submit to the jury any statutory mitigating circumstance supported by the evidence. N.C.G.S. § 15A-2000(b); *Artis,* 325 N.C. at 311, 384 S.E.2d at 489; *State v. Lloyd,* 321 N.C. 301, 311-12, 364 S.E.2d 316, 323 (1988), *sentence vacated on other grounds,* 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand,* 329 N.C. 662, 407 S.E.2d 218 (1991). Here the evidence does not support defendant's contention that he was under a mental or emotional disturbance at the time of the murder. Defendant states that he suffered from drug

withdrawal, which he contends qualifies as a mental or emotional disturbance, at the time of the offense. We conclude that drug withdrawal stemming from voluntary intoxication does not qualify as a mental or emotional disturbance for purposes of N.C.G.S. § 15A-2000(f)(2).

In *State v. Irwin*, 304 N.C. 93, 105-06, 282 S.E.2d 439, 447-48 (1981), we held that voluntary intoxication by alcohol or drugs at the time of the commission of a murder does not qualify as a mental or emotional disturbance under the statute. *See also State v. Greene*, 329 N.C. 771, 775, 408 S.E.2d 185, 186 (1991). Defendant's alleged withdrawal from cocaine and other opiates is simply a stage of voluntary intoxication and therefore cannot support the submission of the mitigating circumstance that defendant was influenced by a mental or emotional disturbance when he committed his offense. We therefore need not reach the question of whether defendant proved he was suffering from withdrawal when he shot the victim.

**[14]** Defendant also contends that a racial slur spoken by the victim provoked him to shoot, indicating that he suffered from a mental disturbance that made him peculiarly susceptible to provocation. Although abnormal susceptibility to provocation can show a mental or emotional disturbance, *id.* at 777, 408 S.E.2d at 188, defendant's evidence did not show that such abnormal provocation occurred. Defendant told police in his statement that the victim called him a "black son-of-a-bitch." He did not say he shot the victim because of this alleged epithet, however; rather, he stated that he shot the victim because "the man tried to stop him from getting the money" he needed for drugs. This evidence reveals that defendant committed the murder for money, not as a result of provocation to which he was abnormally susceptible; it therefore does not support submission of the (f)(2) circumstance. This assignment of error is overruled.

**[15]** Defendant also assigns as error the trial court's refusal to submit the statutory mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. *See* N.C.G.S. § 15A-2000(f)(6). Defendant relies on evidence of his drug withdrawal to show impairment. He also notes that Dr. George Cliette testified that defendant is prone to addiction, lacks appropriate judgment, and has low-average intelligence. Defendant states that his withdrawal, combined with these personality traits, made him less likely to behave lawfully than a normal person. *See State v. Taylor*, 304 N.C. 249, 290, 283 S.E.2d

STATE v. MILLER

[339 N.C. 663 (1995)]

761, 786 (1981) (one definition of diminished capacity is whether a defendant "was for any reason less able than a normal person to do what the law requires or to refrain from what the law forbids"), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L. Ed. 2d 1456 (1983).

The evidence showed that defendant ingested drugs on 30 September and immediately after the murder on 5 October. It also showed that defendant asked for medicine for withdrawal symptoms while in the hospital on 6 October. The record contains no evidence that he was impaired by drugs or withdrawal therefrom at the time of the murder, or that any symptoms of withdrawal he may have experienced at that time impaired his capacity. None of defendant's witnesses, including Dr. Cliette, testified that defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law was impaired. Thus the trial court properly refused to submit the mitigating circumstance. *See State v. Williams*, 305 N.C. 656, 687, 292 S.E.2d 243, 262 (1982) (trial court did not err when it refused to submit the (f)(6) circumstance where "[t]here was no expert psychiatric or other evidence introduced to show that [the defendant's] capacity to appreciate the criminality of his conduct was impaired").

[16] In another assignment of error, defendant contends the trial court erred by failing to submit to the jury the nonstatutory mitigating circumstance that defendant neither threatened nor harmed eyewitnesses to his crimes. Four persons saw him during this robbery and murder; one person was present during each robbery on 3 and 5 October. Defendant argues that he could have hurt these persons in an effort to eliminate potential witnesses but refrained from such conduct. This indicates, according to defendant, that he did not contemplate or desire the wanton destruction of human life; thus, his behavior toward the eyewitnesses should have been submitted in mitigation. The trial court indicated that the evidence supported the circumstances but refused to submit them because it determined that as a matter of law they lacked mitigating value. Defendant argues that this ruling violated *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, which requires that a sentencer be allowed to consider any "circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604, 57 L. Ed. 2d at 990; *see also Woodson v. North Carolina*, 428 U.S. 280, 304, 49 L. Ed. 2d 944, 961 (1976).

We have defined a mitigating circumstance as

a fact or group of facts which do not constitute any justification or excuse for killing or reduce it to a lesser degree of the crime of

first-degree murder, but which may be considered as extenuating, or reducing the moral culpability of the killing, or making it less deserving of the extreme punishment than other first-degree murders.

*Irwin,* 304 N.C. at 104, 282 S.E.2d at 446-47. The absence of an aggravating circumstance is not mitigating. *State v. Hunt,* 330 N.C. 501, 513, 411 S.E.2d 806, 812, *cert. denied,* —— U.S. ——, 120 L. Ed. 2d 913 (1992); *State v. Brown,* 306 N.C. 151, 179, 293 S.E.2d 569, 587, *cert. denied,* 459 U.S. 1080, 74 L. Ed. 2d 642 (1982). Likewise, the absence of bad conduct that could have occurred during the commission of a crime cannot constitute a mitigating circumstance. Mitigating circumstances, statutory and nonstatutory alike, focus on positive aspects of a defendant's character or behavior. *See, e.g.,* N.C.G.S. § 15A-2000(f); *State v. Moseley,* 338 N.C. 1, 62, 449 S.E.2d 412, 448-49 (1994) (positive mitigating circumstances listed), *cert. denied,* —— U.S. ——, —— L. Ed. 2d ——, 63 U.S.L.W. 3539 (1995); *State v. Bacon,* 337 N.C. 66, 82-83, 446 S.E.2d 542, 549 (1994) (same). The categories of positive behavior recognized as mitigating do not include a defendant's failure to harm eyewitnesses. Had defendant here threatened, assaulted, or killed any bystanders, the State could have charged him with additional criminal offenses and submitted additional aggravating circumstances at his trial, such as creating the risk of death to more than one person, N.C.G.S. § 15A-2000(e)(10), or attempting to avoid lawful arrest, N.C.G.S. § 15A-2000(e)(4). We conclude that the trial court properly declined to submit the four requested nonstatutory circumstances because they did not mitigate the robbery and murder or make defendant less culpable for the crimes.

[17] Defendant next assigns as error the trial court's refusal to instruct the jury regarding his potential to be paroled if given a life sentence. Defendant requested an instruction explaining that if sentenced to life imprisonment, he would not be eligible for parole for twenty years, that parole is never an inmate's right, that the Parole Commission would determine whether release of defendant would be appropriate, and that the jury should assume the Commission would perform its duties in a correct and responsible manner. He argues the court's failure to so instruct warrants a new sentencing proceeding.

Parole eligibility is not relevant "during jury selection, closing argument, or jury deliberation in a capital sentencing proceeding." *Bacon,* 337 N.C. at 98, 446 S.E.2d at 558. A trial court should not instruct the jury regarding the meaning of "life imprisonment" absent

STATE v. MILLER

[339 N.C. 663 (1995)]

inquiry by the jury. *State v. Robinson*, 336 N.C. 78, 124, 443 S.E.2d 306, 329 (1994), *cert. denied*, — U.S. —,130 L. Ed. 2d 650 (1995). Further, upon such an inquiry a trial court should instruct the jury not to consider the issue of parole eligibility, but to deliberate as though life imprisonment means imprisonment for life in the State's prison. *Id.* at 123-24, 443 S.E.2d at 329; *State v. Conner*, 241 N.C. 468, 471-72, 85 S.E.2d 584, 587 (1955). *Simmons v. South Carolina*, — U.S. —, 129 L. Ed. 2d 133 (1994), does not require us to overrule our precedents on this issue when, as here, the defendant remains eligible for parole if given a life sentence. *State v. Payne*, 337 N.C. 505, 516-17, 448 S.E.2d 93, 99-100.

As of 1 October 1994, a sentence of life imprisonment shall be "a sentence of imprisonment for life in the State's prison, without parole." N.C.G.S. § 15A-2002 (Supp. 1994). A trial court must now instruct a sentencing jury, in accord with that statute, "that a sentence of life imprisonment means a sentence of life without parole." *Id.* Contrary to defendant's contention, however, this new statute does not entitle him to a new sentencing proceeding. Under the law applicable at the time of defendant's trial, he is eligible for parole, and the trial court was neither required nor allowed to give an instruction on the issue of parole eligibility. This assignment of error is overruled.

[18] In another assignment of error, defendant argues that the trial court erred when it refused to give peremptory instructions on allegedly uncontroverted statutory and nonstatutory mitigating circumstances. He contends first that the court should have instructed peremptorily on the statutory mitigating circumstances that he was influenced by a mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct was impaired. We held above that the court did not err by refusing to submit these circumstances to the jury; it follows that the court did not err by failing to give peremptory instructions on them.

[19] Defendant also contends the court should have given peremptory instructions for all twenty-six of his requested nonstatutory mitigating circumstances. Defendant proposed the following peremptory instruction: "If you find that [describe mitigating circumstance] exists, and I instruct you that all of the evidence shows that this is true, you would so indicate by having your foreman write, 'Yes' in the space after this mitigating circumstance on the form." The trial court refused to give this instruction, deciding it did not accurately reflect North Carolina law to the extent that it required the jury to accord

weight to nonstatutory circumstances. "[N]onstatutory mitigating circumstances do not necessarily have mitigating value." *State v. Daniels*, 337 N.C. 243, 274, 446 S.E.2d 298, 317 (1994), *cert. denied*, — U.S. —, 130 L. Ed. 2d 895, 63 U.S.L.W. 3653 (1995). Jurors who determine that a nonstatutory circumstance exists must therefore decide whether it also has mitigating value. *State v. Huff*, 325 N.C. 1, 58-61, 381 S.E.2d 635, 668-70 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991). A juror properly may give a nonstatutory circumstance no weight even if the juror finds the circumstance to exist. The instruction defendant proposed failed to inform jurors that they could accord no weight to proven nonstatutory circumstances. It thus was contrary to North Carolina law, and the trial court properly refused to give it.

Our decision in *State v. Green*, 336 N.C. 142, 443 S.E.2d 14, rendered subsequent to defendant's trial, provides further support for the trial court's decision. There we held that the pattern jury instruction for statutory mitigating circumstances should not be given for nonstatutory circumstances. This assignment of error is overruled.

[20] Defendant also assigns as error the trial court's failure to instruct the jury that in weighing the mitigating circumstances against the aggravating circumstances, it must consider any mitigating circumstance found by a juror. Defendant requested the following instruction: "If you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances. When deciding this issue, each juror . . . must consider any mitigating circumstance or circumstances that . . . any juror determined to exist by a preponderance of the evidence." The court refused, instructing instead that a juror must consider only those mitigating circumstances that juror determined to exist. Defendant argues that the court's instruction violated *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990).

We recently rejected defendant's position in *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252. There we concluded, after reviewing *McKoy*, that "there is no constitutional requirement that a juror must consider a mitigating circumstance found by another juror to exist. What is constitutionally required is that jurors be individually given the opportunity to consider and give weight to whatever mitigating evidence they deem to be valid." *Id.* at 50-51, 446 S.E.2d at 280. Here, as in *Skipper*, the trial court's instruction "gave each juror this individu-

alized opportunity. Thus, the instructions . . . are valid." *Id.* at 51, 446 S.E.2d at 280.

**[21]** Defendant argues in his next assignment of error that the trial court erred by instructing the jury that it could consider nonstatutory mitigating circumstances it found to exist and to have mitigating value when weighing aggravating and mitigating circumstances. He contends this instruction improperly allowed jurors to decide that a circumstance existed but had no mitigating value. Defendant notes that a sentencing jury must give weight to statutory mitigating circumstances it finds to exist; he then argues no constitutionally valid reason exists to treat nonstatutory mitigating circumstances differently.

We have decided this issue against defendant's position. *Payne*, 337 N.C. at 533, 448 S.E.2d at 109-10. Nonstatutory mitigating circumstances, unlike their statutory counterparts, do not have mitigating value as a matter of law. *Id.*; *State v. Lee*, 335 N.C. 244, 292, 439 S.E.2d 547, 572, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 162, *reh'g denied*, —— U.S. ——, 130 L. Ed. 2d 532 (1994). The trial court's instruction did not violate *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, and its progeny, by precluding jurors from considering evidence offered by defendant in mitigation. We upheld a virtually identical jury instruction in *Payne*; defendant's arguments here do not warrant reversal of our precedent on this issue. This assignment of error is overruled.

PROPORTIONALITY REVIEW

**[22]**    Having found no error in the guilt/innocence or sentencing phases, we must

> review the record to determine (1) whether the record supports the jury's finding of the aggravating circumstance[s] upon which the sentencing court based its sentence of death; (2) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence of death is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

*Payne*, 337 N.C. at 536, 448 S.E.2d at 111 (quoting N.C.G.S. § 15A-2000(d)(2)). Having thoroughly examined the record, transcripts, and briefs in this case, we conclude that the evidence supports all three aggravating circumstances found by the jury, namely, that the capital felony was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6); that the felony was part of a course of conduct

involving violent crimes against other persons, N.C.G.S. § 15A-2000(e)(11); and that defendant had a prior conviction of a violent felony, N.C.G.S. § 15A-2000(e)(3). The record does not suggest that the sentence of death was imposed under passion, prejudice, or any other arbitrary factor. We thus turn to our final statutory duty of proportionality review "to compare the case at bar with other cases in the pool [as defined in *State v. Williams*, 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *Bacon*, 337 N.C. at 106-07, 446 S.E.2d at 563-64] which are roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985).

Proportionality review is designed to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). It also guards against " 'the capricious or random imposition of the death penalty.' " *Bacon*, 337 N.C. at 104, 446 S.E.2d at 562 (quoting *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980), *reh'g denied*, 448 U.S. 918, 65 L. Ed. 2d 1181 (1981)). We cannot conclude based on the record that the imposition of the death penalty in this case is aberrant or capricious.

This case is distinguishable from those in which we have held the death sentence disproportionate. In three of those cases—*State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); and *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983)—the jury convicted the defendant, or the defendant pled guilty, solely under the felony murder rule. Here, defendant was convicted on the basis of malice, premeditation, and deliberation as well as the felony murder rule. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *Artis*, 325 N.C. at 341, 384 S.E.2d at 506.

In *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988), the defendant shot the victim while trying to shoot a different person with whom he had argued. The jury there found only one aggravating circumstance, and the defendant was only nineteen years old. Here defendant shot the victim from point-blank range during an armed robbery. The jury found three aggravating circumstances, and defendant was thirty-five years old at the time of the crime.

In *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985), we noted that the case was unlike robbery-murder cases in which the death penalty had been imposed because the jury did not find the aggravating circumstance that the defendant was engaged in a course of conduct involving another violent crime. The jury in this case found that circumstance. It also found that defendant had been convicted of previous violent crimes, an aggravating circumstance not present in *Young*.

In *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984), the evidence did not clearly show how the murder occurred or how defendant acted when he encountered the victim. Here, no question exists about the circumstances of the murder, and the evidence clearly shows defendant's involvement in the crime.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983), the defendant attempted to obtain medical help for his victim and had no apparent motive for the killing. Here, defendant robbed the victim, who lay bleeding on the floor, and defendant had a clear motive of pecuniary gain.

We recognize that juries have imposed sentences of life imprisonment in several robbery-murder cases. However, "the fact that one, two, or several juries have returned recommendations of life imprisonment in [similar] cases . . . does not automatically establish that juries have 'consistently' returned life sentences in factually similar cases." *State v. Green*, 336 N.C. at 198, 443 S.E.2d at 47. Our review of such cases reveals that they are distinguishable and do not render the sentence of death in this case disproportionate. The jury in several of them—for example, *State v. Hill*, 308 N.C. 382, 302 S.E.2d 202 (1983); *State v. Barnette*, 307 N.C. 608, 300 S.E.2d 340 (1983); and *State v. Booker*, 306 N.C. 302, 293 S.E.2d 78 (1982)—found that the defendant's capacity to appreciate the criminality of his conduct was impaired, or that he suffered from a mental or emotional disturbance, or both.[1] Here, by contrast, the evidence did not justify the submission of either mitigating circumstance. Defendant was fully aware of his actions on the night of the crimes; he committed a coldly calculated murder because the victim refused to hand over money from his cash register.

Further, many factually similar cases do not involve the aggravating circumstances found by the jury here. For example, in *State v.*

---

1. The mitigating circumstances are not listed in the opinions but are in the records of the cases maintained by this Court.

*Howard,* 334 N.C. 602, 433 S.E.2d 742 (1993), the jury found that the defendant committed the robbery-murder for pecuniary gain and had committed prior violent felonies, but not that the murder was part of a course of conduct involving other violent crimes. Additionally, the jury convicted the defendant solely under the felony murder rule, whereas here the jury convicted defendant under that rule as well as on the theory of premeditation and deliberation. In *State v. Marlow,* 334 N.C. 273, 432 S.E.2d 275 (1993), the jury found the murder had been committed during a burglary and for pecuniary gain, but not that the defendant had a prior history of violent felonies or that the murder was part of a violent course of conduct. The course of conduct circumstance is often present in cases where the jury imposes death instead of life imprisonment. *See State v. Lawson,* 310 N.C. at 648-49, 314 S.E.2d at 503-04. The defendants in *State v. Reeb,* 331 N.C. 159, 415 S.E.2d 362 (1992), were convicted of first-degree murder and armed robbery; as in this case, the jury found premeditation and deliberation and also applied the felony murder rule. The jury found only two aggravating circumstances: that the murder was part of a course of conduct and that it was committed while the defendant was engaged in a robbery. Unlike defendant here, neither defendant in *Reeb* had been convicted of previous violent felonies, and both had impaired capacity. The cases similar to this one in which life sentences were imposed thus are distinguishable from this one. Our review of the cases does not reveal that juries have consistently imposed sentences of life imprisonment in cases similar to this one.

Further, this case is similar to cases in which we have found the death penalty proportionate. We have upheld a sentence of death where, as in this case, the jury found the aggravating circumstances that the defendant committed the crime for pecuniary gain and during a course of conduct involving other violent crimes. *See, e.g., Daniels,* 337 N.C. 243, 446 S.E.2d 298; *State v. Jones,* 336 N.C. 229, 443 S.E.2d 48, *cert. denied,* — U.S. —, 130 L. Ed. 2d 423 (1994), *reh'g denied,* — U.S. —, 130 L. Ed. 2d 676 (1995); *Green,* 336 N.C. 142, 443 S.E.2d 14; *State v. Gardner,* 311 N.C. 489, 319 S.E.2d 591 (1984), *cert. denied,* 469 U.S. 1230, 84 L. Ed. 2d 369 (1985). The jury found a third aggravating circumstance here: that defendant had been convicted of prior violent crimes. Additionally, the convictions in both *Green* and *Gardner* were based solely on the felony murder rule; here, the jury convicted both under that rule and on the theory of premeditation and deliberation. This case thus is more egregious

than others involving a robbery-murder in which we have held the death penalty proportionate.

We hold that defendant received a fair trial and sentencing proceeding, free of prejudicial error. Comparing this case to similar cases in which the death penalty was imposed, and considering both the crime and the defendant, we cannot hold as a matter of law that the death penalty was disproportionate or excessive.

NO ERROR.