STATE OF NORTH CAROLINA
v.
GREGORY S. GROSHOLZ
No. COA08-1365
Court of Appeals of North Carolina
Filed: September 15, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Joan M. Cunningham, for the State.
Russell J. Hollers, III, for Defendant.
BEASLEY, Judge.
Defendant appeals from judgment entered on his conviction of first-degree murder. We find no error.
In 2005 Defendant and Lenka Grosholz (Lenka) were married and living in the Rose Hill area of Duplin County, North Carolina. Defendant received disability assistance, and Lenka worked at Dell Laboratories, in Rocky Point, North Carolina. In December 2005, Lenka moved out of the marital home and rented an apartment in Leland, North Carolina. On 29 December 2005 Lenka was killed by a fatal stab wound to her chest. On 1 January 2006 Defendant was arrested and charged with first-degree murder of Lenka.
On 30 November 2005 around 5:00 a.m., Trooper Rich (then Deputy Rich) responded to a domestic violence call from Defendant's house. Defendant told Rich that Lenka had assaulted him, and showed the officer faint facial scratches. Lenka seemed afraid to speak with him, so Rich interviewed the two separately. When he spoke with Lenka, she informed him that she came home from work and Defendant accused her of an extramarital relationship. They fought and Defendant held her down on the floor. Lenka had red marks on her arms, chest area, and shoulders, consistent with her description of being held down. After speaking with both Defendant and Lenka, Rich arrested Defendant for assault on a female. Shortly after the altercation, Lenka moved into an apartment in Leland, North Carolina, and obtained a domestic violence protective order against Defendant.
Two Dell employees testified that Lenka told them that the Defendant had been physically abusive, that she had a domestic violence protective order against Defendant, and that even with the protective order, she was afraid of Defendant. In late November 2005 Lenka applied for a concealed handgun permit. However, she was killed before receiving the concealed weapon permit.
Two other Dell employees testified for the State. James Schupp, Dell's director of human resources, testified that in late November 2005 he received a phone call from a man identifying himself as Gregory Grosholz. The caller said that Lenka had lied on her resume and had stolen from the company. In December 2005 Schupp received two letters following up on these accusations. Schupp testified that Lenka had passed a background check and that he did not agree with Defendant's characterization of her resume as false. Lenka was killed before the company could pursue an investigation into whether she had stolen items from Dell. Kristina Guthrie, a Dell human resources employee who processed the employees' life insurance policies, testified that Lenka had three life insurance policies through the company. On 13 December 2005 she removed Defendant as the beneficiary of the three policies and replaced him with her mother. She told Guthrie that she was doing this because they were divorcing and because she was frightened for her safety.
Several witnesses testified that Defendant talked about killing Lenka. Defendant had said that if he could not have Lenka, then nobody else could. On another occasion, shortly after Christmas day, Defendant came to Mark Davis' house and asked Davis to loan him $5000 so that he could hire a gunman to kill Lenka. Davis refused to take part in the plan. Davis also testified that, when he came to borrow money, Defendant seemed vengeful, rather than crying or emotional.
Alfred Amoroso testified that he lived in Baltimore, Maryland, and that he was Defendant's half-brother. Defendant called Amoroso between 12:00 and 1:00 p.m. on December 28 or 29, 2005, and asked if Amoroso knew anyone who Defendant could hire for $5000 to kill Lenka. Amoroso told Defendant that he did not know anyone like that and told Defendant to call back later. Defendant called again between 3:00 and 4:00 p.m. the same day. This time he asked if Amoroso would be willing to leave his phone off the hook for an hour. Amoroso testified that, in the context of their earlier conversation, Defendant appeared to be "looking for an alibi for an hour."
Defendant did not present any evidence. On 29 February 2008 the jury found Defendant guilty of first-degree murder. The court sentenced Defendant to life imprisonment without parole. Defendant appeals from this conviction and judgment.
Defendant first argues that the trial court erred in failing to instruct the jury on the lesser included offense of second-degree murder. We disagree.
Defendant argues on appeal that, during the charge conference, defense counsel "argued that the evidence supported the submission of second degree murder[.]" Our review of the transcript suggests otherwise. At the beginning of the charge conference, the State requested that the court submit two possible verdicts to the jury, first-degree murder or not guilty. Defense counsel responded by informing the trial court that "upon the instruction of the Defendant, he agrees with the [S]tate. First degree murder or not guilty."
The trial court explained to defense counsel that it was "required to submit second degree, regardless of counsel's feelings" if the evidence warranted it, and asked Defendant's attorney to present his "analyses, not just what your client wants you to do." Defense counsel opined that "the law would provide for an instruction" on second-degree murder on the basis that his previous motion for dismissal of the charge against Defendant had "encompassed within it" a challenge to the State's evidence of premeditation and deliberation. Defense counsel also noted that the instruction on second-degree murder "almost always is given" and that counsel "believe[d] that the law dictates that the court shall give a second degree murder instruction in a first degree murder case." However, defense counsel did not identify any trial evidence that might support such an instruction.
In response to defense counsel's remarks, the trial court clarified that:
The court should submit second degree murder only if the evidence tends to show a lack of premeditation and deliberation or would permit a jury to rationally find the Defendant guilty of the lesser offense of second degree murder, acquitting him of first. Now, as you've analyzed the evidence, sir, what do you say as to the submission of second degree murder, under the evidence of this case?
Defense counsel then stated that:
. . . I don't know that the evidence does warrant the submission of second degree. There's has been [sic] voluminous evidence presented as to solicitation for the crime of murder. Well, I mean, in light of Strickland, let me have a moment to rethink that.
While defense counsel was "rethinking" the issue, the State argued that there was no evidence to warrant submission of second-degree murder as a possible verdict. The trial court then asked the Defendant if he had "anything else" to say and defense counsel replied "No, Your Honor." We conclude that defense counsel did not request the trial court to instruct on second-degree murder and did not argue to the court that any particular evidence warranted submission of second-degree murder.
A trial court is required to instruct on a lesser included offense only when there is evidence to support a verdict finding the defendant guilty of the lesser offense. "The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense."
State v. Gibbs, 335 N.C. 1, 52-53, 436 S.E.2d 321, 350 (1993) (quoting State v. Peacock, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985) and citing State v. Tucker, 329 N.C. 709, 721, 407 S.E.2d 805, 812 (1991)) (internal quotation omitted).
At the end of the charge conference, the trial court asked for additions or corrections, and Defendant had none.
In sum, the Defendant neither requested an instruction on second-degree murder, nor objected to the court's omission of this instruction. "[W]e note that defendant did not request such an instruction at trial and therefore is entitled to review only for plain error. N.C. R. App. P. 10(c)(4)." State v. Thomas, 350 N.C. 315, 348, 514 S.E.2d 486, 506 (1999) (citations omitted).
"Although in his assignment of error he `specifically and distinctly contended' pursuant to Rule 10(c)(4) of the Rules of Appellate Procedure that the error amounted to plain error, defendant failed to argue in his brief that the trial court's instruction amounted to plain error. See N.C. R. App. P. 28(a), (b)(5). Accordingly, defendant has waived appellate review of this assignment of error." State v. Nobles, 350 N.C. 483, 514-15, 515 S.E.2d 885, 904 (1999) (citing See State v. King, 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995)).
Upon a motion to dismiss for failure to instruct the jury on a lesser included offense "a defendant may not decline an opportunity for instructions on a lesser included offense and then claim on appeal that failure to instruct on the lesser included offense was error." State v. Gay, 334 N.C. 467, 489, 434 S.E.2d 840, 852 (1993). "A Defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c)(2007).
In State v. Sierra, 335 N.C. 753, 760, 440 S.E.2d 791, 795 (1994), the defendant was found guilty of first-degree murder and argued on appeal that the evidence of premeditation and deliberation was equivocal and that the jury should have been instructed on the charge of murder in the second-degree. Id. The Court held:
"A defendant is not prejudiced . . . by error resulting from his own conduct." N.C.G.S. § 15A-1443(c) [(2007)]. Here, defendant foreclosed any inclination of the trial court to instruct on the lesser-included offense of second-degree murder. The trial court specifically asked defendant if he desired an instruction on a lesser-included offense. Defendant stated a total of three times that he did not want such an instruction[.] . . . We conclude that defendant is not entitled to any relief and will not be heard to complain on appeal.
Id.
We conclude that Defendant waived appellate review of this issue by failing to object at trial, and failing to argue plain error on appeal. Moreover, out of an abundance of caution we have reviewed the evidence and conclude that Defendant was not entitled to an instruction on second-degree murder. This assignment of error is overruled.
The State offered testimony from several of Lenka's co-workers at Dell Laboratories. In addition to their testimony about events surrounding Lenka's murder, these witnesses also testified generally that Lenka was a good worker and a kind person, and that she was a good supervisor who had good relations with her fellow employees. Defendant did not object to any of this evidence. However, he argues on appeal that the trial court committed plain error by allowing this evidence of Lenka's performance at work and her relationship to co-workers. We disagree.
Because Defendant did not object at trial, we review only for plain error. State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).
In the present case, the State presented overwhelming evidence of Defendant's commission of premeditated and deliberate first-degree murder, including the following:
Donnie Long's testimony that, shortly before Lenka was murdered, he was at Defendant's house and heard Defendant discussing killing her, or paying someone else $5000 to shoot her;
Long's testimony that Defendant told him that he had been following Lenka and knew where she lived;
Mark Davis's testimony about the incident at Defendant's house and about another occasion when Defendant had tried to borrow $5000 from Davis in order to hire someone to kill Lenka;
Alfred Amoroso's testimony that Defendant had called him on either the day of the murder or the day before, asking Amoroso for help finding a hired killer to murder Lenka;
Amoroso's testimony that, after he refused to help Defendant hire a gunman to kill Lenka, Defendant called back and asked Amoroso to leave his phone off the hook for an hour;
Officer Rich's testimony that he had responded to a domestic violence call at Defendant's house and, after speaking privately with both Defendant and Lenka, had decided to arrest Defendant for assault on a female;
Schupp's testimony that, after Lenka moved out of the marital home, Defendant tried to have her fired from her job;
Guthrie's testimony that, two weeks before Lenka's death, Lenka had removed Defendant as the beneficiary of her life insurance policies, in part because she was afraid for her safety;
Deputy Ward's testimony that, shortly before her death, Lenka had applied for a concealed weapon permit;
Ainsley Drayton's testimony that at around the time of Lenka's murder, she heard noises from Lenka's apartment and observed someone open and close the apartment door quickly;
Officer Hall's testimony that Lenka was found lying on the hall floor of her apartment and that her keys and wallet had not been stolen;
SBI Agent Clifton's testimony about the condition of Lenka's apartment after she was killed;
Dr. Kelly's testimony that Lenka was killed by a fatal stab wound from a large sharp object;
Detective Foss's testimony that, when he interviewed Defendant the night after Lenka was murdered, Defendant had a band-aid on his left hand and held a towel over gouges on his left cheek, and;
SBI Forensic Biologist Sharon Hinton's testimony that DNA analysis revealed that Lenka had Defendant's DNA under her right fingernails and that Defendant's DNA matched that of blood found on a paper tissue at the apartment shortly after Lenka was killed.
To summarize, the evidence showed that Defendant had threatened or assaulted Lenka in November and December 2005; that Defendant was planning to kill Lenka for several weeks before her death; that he solicited others to help him murder her; that his DNA was found on Lenka's right hand, and Defendant had gouges on his left cheek, and; that Defendant's DNA was found on a piece of paper at the scene of the murder.
The challenged evidence consists of generalized testimony from Lenka's co-workers attesting to her congeniality and competence in the workplace. Defendant has failed to show that this affected the outcome of the trial, given the quantity and quality of evidence against the Defendant. We conclude that even assuming, arguendo that the admission of this evidence was error, it does not rise to the level of plain error. This assignment of error is overruled.
Defendant's next argument is that the trial court "erred in allowing State's witnesses to testify about what [Lenka] had told them and that [Defendant] was a controlling, threatening, violent man." We disagree.
Defendant argues on appeal that the trial court erred by admitting the following evidence:
Josephine Rivenbark's testimony that Lenka said Defendant was controlling and "played mind games"; that he carried a gun in his truck; that Lenka had taken out a restraining order against Defendant; and that Defendant had threatened to kill Lenka.
Joseph Heller's testimony that Lenka told him she had taken out a restraining order against Defendant and that there had been occasions when Defendant hit her and she fought back.
Deputy Rich's testimony that, when he responded to Defendant's domestic violence 911 call, Lenka told him that she and Defendant had argued about Lenka's boyfriend and that Defendant had held her down on the floor.
Former Deputy Ward's testimony that Lenka had applied for a concealed weapon permit and had said "she was going through a bad divorce."
Amoroso's testimony that he was uncomfortable when Defendant and Lenka argued in front of his family, and that Defendant was in charge of his household and was "very stern" about it.
On appeal, Defendant generally asserts error in the admission of these statements, and makes broad-brush arguments that the challenged testimony is inadmissible, either as hearsay, character evidence, or evidence of prior bad acts. However, Defendant does not associate any specific statement or testimony with any given argument. For example, he asserts that the court "allowed the state to elicit evidence that the defendant had committed violent acts for which he was not on trial" in violation of North Carolina Rules of Evidence 404(b), but does not identify specific testimony to which this analysis applies. Defendant's "non-specific and general argument amounts to no more than a request for this court to wade through the record to determine if the assignment of error has merit." State v. Marshall, 92 N.C. App. 398, 411, 374 S.E.2d 874, 881 (1988) (citations omitted).
Moreover, Defendant failed to raise these arguments at trial.
Appellate courts ordinarily do not review matters which were not first considered and ruled on by the trial court. "The law does not require trial judges to be clairvoyant and omniscient. Neither does it permit defense counsel to play hide and seek with objections. The trial court, upon inquiry, is entitled to know the ground upon which an objection is interposed; and if counsel specifies one ground, he cannot be heard to urge a different ground on appeal."
Cates v. Wilson, 321 N.C. 1, 17 n.2, 361 S.E.2d 734, 744 n.2 (1987) (quoting State v. Cumber, 280 N.C. 127, 131, 185 S.E. 2d 141, 144 (1971)).
Nonetheless, we have assessed the admission of the challenged testimony and conclude that the trial court committed neither error nor plain error. Further, as discussed above, the state presented voluminous evidence of Defendant's guilt. Even assuming, arguendo, error in the admission of the challenged testimony, we conclude that such error would be harmless. This assignment of error is overruled.
Finally, Defendant argues that the trial court erred in denying Defendant's motions to dismiss the short-form murder indictment. Defendant's argument has been rejected by the Supreme Court of North Carolina. See State v. Braxton, 352 N.C. 158, 174, 531 S.E.2d 428, 437 (2000) ("[T]his Court has consistently held that indictments for murder based on the short-form indictment statute are in compliance with both the North Carolina and United States Constitutions."). "This Court is bound by precedent of the North Carolina Supreme Court." State v. Gillis, 158 N.C. App. 48, 53, 580 S.E.2d 32, 36 (2003) (citation omitted). This assignment of error is overruled.
For the foregoing reasons, we conclude that Defendant had a fair trial, free of reversible error.
No error.
Judges MCGEE and HUNTER, Robert C. concur.
Report per Rule 30(e).