STATE OF NORTH CAROLINA v. JAIME DUARTE SIERRA

No. 93A93

(Filed 4 March 1994)

1. Homicide § 246 (NCI4th)— first-degree murder—sufficiency of evidence—premeditation and deliberation—circumstantial evidence

The trial court did not err in denying defendant's motion to dismiss in a first-degree murder prosecution where defendant argued that there was insufficient evidence to support a jury finding that defendant killed the victim with specific intent after premeditation and deliberation but there was no evidence of provocation by the victim; there was plenty of evidence of ill will between the families, which can be considered as evidence of ill will between defendant and the victim; defendant's conduct before and after the killing was evidence of premeditation and deliberation in that defendant waited until "the boy" actually came to the door before he began shooting through it; defendant could have seen the victim through a window in the door and told a fellow inmate that he had waited until the victim came to the door to shoot; defendant did not check the victim after the shooting, leaving him to die; defendant returned home after the shooting, hid the weapon and went to sleep; and defendant stood in front of the victim's door and fired a .9 millimeter Ruger pistol at the victim at least six times as the victim was unlocking the door, hitting the victim, who was unarmed, at least three times.

Am Jur 2d, Homicide §§ 437, 439.

2. Appeal and Error § 504 (NCI4th)— first-degree murder—no instruction on second-degree murder—invited error

Defendant was not entitled to relief in a first-degree murder prosecution in which the court did not instruct on second-degree murder where defendant stated a total of three times at trial that he did not want such an instruction, telling the trial court that such an instruction was not supported by the evidence and was contrary to defendant's theory of the case. Any error in not instructing on the lesser-included offense was invited by defendant.

Am Jur 2d, Appeal and Error § 719.

**3. Evidence and Witnesses § 1483 (NCI4th) — first-degree murder — bullet — admissible**

There was no plain error in a first-degree murder prosecution in the admission of a .9-millimeter bullet where defendant contended that the State failed to establish the bullet's connection to the crime but there was evidence that the victim died of a gunshot wound; the victim was transferred to the hospital by the EMS crew that arrived at the scene of the shooting; the detective in charge of the investigation went to the hospital to inquire about the victim and was handed a .9 millimeter bullet by hospital personnel; casings from a .9 millimeter pistol had been found at the site of the shooting; and it was determined that the bullet and the casings both came from defendant's gun, which was found hidden at his home. Even assuming that it was error to admit the bullet, defendant did not meet his burden of showing that the jury would have reached a different verdict if the bullet had not been admitted because the bullet was not the only piece of evidence which linked defendant to the scene of the crime or to the actual killing.

**Am Jur 2d, Homicide § 414.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment upon his conviction of first-degree murder entered by Hudson, J., at the 5 October 1992 Criminal Session of Superior Court, Lee County. Heard in the Supreme Court 8 December 1993.

*Michael F. Easley, Attorney General, by Steven F. Bryant, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, and Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

On 29 June 1992, defendant, Jaime Duarte Sierra, was indicted for the first-degree murder of Refugio "Cuco" Maldonado. Defendant was tried noncapitally in the Superior Court, Lee County, in October 1992 and was found guilty of the first-degree murder of Refugio Maldonado. The trial court thereafter imposed the mandatory life sentence.

The evidence presented by the State at trial tended to show the following. The victim and his father were Mexican natives who had come to the United States seeking work in 1988. When the victim and his father first came to North Carolina, they stayed with the Saucedas, whom they had known in Mexico. However, the two families soon began quarreling over personal matters, and the Maldonados moved out of the Saucedas' home. Defendant was the father of two of Estella Sauceda's children and had lived with her for five years. Defendant had told the victim, whom he knew from work, that he would "back" the Saucedas in their argument with the Maldonados. Defendant and the victim had also had a personal argument over a lost driver's license manual.

On 9 April 1992, the victim and his father saw Estella Sauceda at a grocery store. The victim and his father were standing in the grocery store talking and laughing when Estella came up to them and said in Spanish, "this afternoon your joy will end."

Around 10:00 that evening, there was a knock on the door of the victim's mobile home. As the victim was unlocking the door, shots were fired through it. The victim's father, Gregorio, ducked behind a counter to avoid the gunfire. When the shooting stopped, Gregorio went to a neighbor and asked someone to call for help. Refugio had been struck by three bullets and showed no signs of life after the shooting. Emergency medical service ("EMS") personnel arrived in response to the call and immediately transported the victim to Central Carolina Hospital. The victim was found to be dead upon arrival at the hospital.

The evidence showed that shots had been fired from the front porch and front yard of the Maldonados' mobile home. Six brass casings from a .9-millimeter weapon were found on the porch; three plastic waddings from .20-gauge shotgun shells and three .20-gauge shotgun shells were found in the yard. No fingerprints, footprints, hair, or clothing fibers were found at the crime scene.

After leaving the crime scene, Detective Dawkins, who was in charge of the investigation, went to Central Carolina Hospital in Sanford to check on the victim. While at the hospital, a member of the hospital staff gave Dawkins a rubber glove that contained a partially flattened .9-millimeter brass-jacketed bullet.

Witness Seagroves reported seeing a black Blazer driving away from the crime scene a little after he heard shots being fired.

Detectives had been told by Gregorio that he believed the Sauceda men were involved in the shooting. The detectives went to the Saucedas' home to investigate and learned from Carlos Sauceda that defendant owned a black Blazer. Police then went to defendant's home, where they spotted a black Blazer, which defendant said he owned. Witness Seagroves later identified defendant's Blazer as similar to the one he saw driving away from the crime scene.

Defendant, Estella Sauceda, defendant's brother, and Estella's three children were at the mobile home when police arrived that night. Estella gave the police permission to search her mobile home. The police found four to five pounds of marijuana, a Ruger .9-millimeter automatic pistol, a Beretta .380 semiautomatic handgun, and a Mossburg .20-gauge pump shotgun in the mobile home. Defendant admitted owning the .9-millimeter pistol.

It was determined that the .9-millimeter casings found on the porch and the bullet recovered from the hospital were fired from the .9-millimeter pistol seized from defendant's mobile home. The three .20-gauge shotgun shells found in the yard had been "worked through" the action of the .20-gauge shotgun recovered from defendant's mobile home. Although not able to identify the specific type of weapon that caused the victim's wounds, it was determined that victim's wounds were not from a shotgun.

One of defendant's cellmates, Mark Baldwin, testified that defendant told him that he had killed the victim because of an argument between Estella and the Maldonados at the grocery store earlier in the day. Defendant said that he, his brother, and his brother-in-law went to the Maldonados, knocked on the door, and began shooting when "the boy" came to the door.

Defendant took the stand on his own behalf and stated that he did not shoot the victim. Defendant said he had loaned the gun to his friend Antonio Sunega earlier that day and that Sunega had returned the gun that evening before the police had arrived. Defendant testified that he did not tell Baldwin that he had shot the victim and presented additional evidence that Baldwin was known to be a liar.

Estella testified that someone had come to their door the night of the murder after she and defendant had gone to sleep but before the police arrived. Estella also said that defendant had been asleep next to her since 8:00 p.m. on the night of the murder. Finally,

Estella denied going to the Food Lion on the day of the murder and stated that she had not seen the Maldonados in quite some time.

Additional facts will be discussed as necessary for the proper disposition of issues raised by defendant.

[1] At the end of the State's evidence, defendant moved to dismiss the charge of first-degree murder. This motion was renewed at the close of all evidence. Defendant argues that there was insufficient evidence to support the jury's finding that defendant killed Refugio Maldonado with specific intent, after premeditation and deliberation. In reviewing defendant's argument on this issue, we note that the standard of review under which we consider this issue has been well established.

> The evidence is to be viewed in the light most favorable to the State. *State v. Thomas*, 296 N.C. 236, 250 S.E.2d 204 (1978). All contradictions in the evidence are to be resolved in the State's favor. *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (1984). All reasonable inferences based upon the evidence are to be indulged in. *Id.* . . . [W]hile the State may base its case on circumstantial evidence requiring the jury to infer elements of the crime, that evidence must be real and substantial and not merely speculative. Substantial evidence is evidence from which a rational trier of fact could find the fact to be proved beyond a reasonable doubt. *State v. Pridgen*, 313 N.C. 80, 326 S.E.2d 618 (1985); *State v. Jones*, 303 N.C. 500, 279 S.E.2d 835 (1981).

*State v. Reese*, 319 N.C. 110, 138-39, 353 S.E.2d 352, 368 (1987).

Before a trial court may submit a charge of first-degree murder to a jury, there must be substantial evidence of every essential element of the offense charged and that defendant was the perpetrator of the crime. *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). The trial court need only satisfy itself that the evidence is sufficient to take the case to the jury; it need not be concerned with the weight of that evidence. *Id.*

We have reviewed the transcripts, record, and briefs in this case and conclude that the State presented sufficient evidence of the intent to kill to allow the jury to determine whether defendant was guilty of first-degree premeditated and deliberated murder.

To determine if a crime was done with premeditation and deliberation, there must be evidence that a defendant thought about the act for some length of time, however short, before the actual killing; no particular amount of time is necessary to illustrate that there was premeditation. *State v. Myers*, 299 N.C. 671, 677, 263 S.E.2d 768, 772 (1980). To determine if a defendant deliberated or intended to kill someone, we consider if the crime was "carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Bullock*, 326 N.C. 253, 257, 388 S.E.2d 81, 83 (1990). We have recognized that it is difficult to prove premeditation and deliberation and that these factors are usually proven by circumstantial evidence because they are mental processes that are not readily susceptible to proof by direct evidence. *State v. Thomas*, 332 N.C. 544, 556, 423 S.E.2d 75, 82 (1992). Recognizing this difficulty, this Court has set out circumstances that are illustrative of the existence of premeditation and deliberation. They include:

(1) absence of provocation on the part of deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Olson*, 330 N.C. 557, 565, 411 S.E.2d 592, 596 (1992). Four of the seven above circumstances were present in the case at bar.

We note, first, that there was no evidence of any provocation on the part of the victim. However, there was plenty of evidence of ill will between the Maldonados and the Saucedas. Because of defendant's connection to the Sauceda family and the fact that he had told the victim that he would back up the Saucedas in their quarrel against the Maldonados, we consider the evidence of the ill will between the families as evidence of ill will between defendant and the victim. The families first had argued when one of Carlos Sauceda's sons married and then abandoned one of Gregorio

Maldonado's daughters in Mexico. The families also argued about phone bills to Mexico. Defendant and the victim had personally argued about a lost driver's license manual, getting into a fight about the lost book at work, which resulted in both men being fired. Defendant and Estella had also fought with the Maldonados in church. Finally, on the day of the murder, Estella had walked up to the victim and his father and told them "this afternoon your joy will end." All these incidents illustrate that ill will existed between defendant and the victim.

Defendant's conduct before and after the killing was also evidence of premeditation and deliberation. Defendant waited until "the boy" actually came to the door before he began shooting through it. Defendant could have seen his victim through a window in the door, and he told a fellow inmate that he had waited until the boy came to the door to shoot. Defendant did not check on his victim after he shot him, instead leaving him to die. After the shooting, defendant returned home, hid the murder weapon, and went to sleep. We found similar facts to be evidence of premeditation and deliberation in *State v. Hunt*, 330 N.C. 425, 428, 410 S.E.2d 478, 481 (1991).

Finally, the nature and number of the victim's wounds provided evidence that the killer premeditated and deliberated. In the case at hand, defendant fired a .9-millimeter Ruger pistol at the victim at least six times. Defendant stood in front of the door and fired shots at the victim as the victim was unlocking the door. The victim was unarmed and was hit three times. The multiple firings at close range, which ensured the victim's demise, were further evidence of premeditation and deliberation. *See State v. Hunt*, 330 N.C. at 428, 410 S.E.2d at 481 (evidence that victim killed by three gunshot wounds in the back supported finding of premeditation and deliberation based on nature and number of wounds); *State v. Robbins*, 319 N.C. 465, 511, 356 S.E.2d 279, 306 (nature and number of wounds support finding of premeditation and deliberation; victim shot five times at close range), *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

The overwhelming weight of the evidence supports the conclusion that the trial court did not err in denying defendant's motion to dismiss.

[2] Defendant next contends that the evidence of premeditation and deliberation was equivocal and that the jury should have been

instructed on the charge of murder in the second degree. The record plainly reveals that any error in not instructing on the lesser-included offense was invited by defendant, who expressly stated that such an instruction need not, and in fact should not, be given.

Defendant indicated unequivocally to the trial court on two occasions that he did not wish for the jury to be instructed on second-degree murder. At the end of the case, before concluding for the day, the court asked: "Is there going to be any request from the defendant for any lesser offense other than first degree murder and not guilty?" The defendant responded, "No, Your Honor." At the charge conference, the following colloquy occurred between the court and defense counsel:

> THE COURT: Did not intend to instruct on lesser included [offenses]. I'll hear from the defendant on that so we'll know what we are talking about.

> MR. HAGAR [defense counsel]: Your Honor, I think the defense theory and evidence in the case doesn't support that [submission of lesser included offense].

> THE COURT: All right, so it would be first degree murder or not guilty?

> MR. HAGAR: Yes, sir.

"A defendant is not prejudiced . . . by error resulting from his own conduct." N.C.G.S. § 15A-1443(c) (1988). Here, defendant foreclosed any inclination of the trial court to instruct on the lesser-included offense of second-degree murder. The trial court specifically asked defendant if he desired an instruction on a lesser-included offense. Defendant stated a total of three times that he did not want such an instruction, telling the trial court that such an instruction was not supported by the evidence and was contrary to defendant's theory of the case. We conclude that defendant is not entitled to any relief and will not be heard to complain on appeal. *State v. Williams*, 333 N.C. 719, 728, 430 S.E.2d 888, 893 (1993); *see also State v. Gay*, 334 N.C. 467, 485, 434 S.E.2d 840, 850 (1993); *State v. Patterson*, 332 N.C. 409, 415, 420 S.E.2d 98, 101 (1992).

[3] In defendant's third and final assignment of error, he alleges that it was error to admit into evidence State's Exhibit 7, a .9-millimeter bullet, where the State failed to establish the bullet's

connection to the crime. We conclude that this argument is without merit.

We first note that no objection was made to the admission of the bullet at trial; thus, the error must be reviewed under the plain error rule. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). In order to prevail under a plain error analysis, defendant must establish not only that the trial court committed error, but that "absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

This Court has held that "any object which has a relevant connection with the case is admissible in evidence, in both civil and criminal trials. Thus, weapons may be admitted where there is evidence tending to show that they were used in the commission of a crime . . . ." *State v. Crowder*, 285 N.C. 42, 46, 203 S.E.2d 38, 41-42 (1974), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1207 (1976). Under Rule 401, "relevant evidence" is that evidence which has a logical tendency to make a fact at issue "more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Though the evidence presented may only be circumstantial, it is admissible if it tends to connect a defendant with a homicide. *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989). The weight to be given such circumstantial evidence is a decision for the jury. *Id.*

In the case at hand, the .9-millimeter bullet was relevant to establish that defendant killed the victim. There was evidence presented that the victim died of a gunshot wound. The victim was transferred to Central Carolina Hospital by the EMS crew that arrived at the scene of the shooting. Detective Dawkins, who was in charge of the investigation for the county, went to the hospital after investigating the crime scene for the purpose of inquiring about the victim and was handed the .9-millimeter bullet by the hospital personnel. Casings from a .9-millimeter pistol had been found on the front porch of the victim's home, outside the front door. It was determined that the bullet and the casings both came from defendant's gun that was found hidden at his home. All this evidence tended to show that State's Exhibit 7 was a bullet from the victim's body. Thus, the bullet was relevant to defendant's case and was properly admitted into evidence. The fact that there was no direct evidence connecting the bullet to

STATE v. SIERRA

[335 N.C. 753 (1994)]

the body affects the probative force of the exhibit, not its admissibility.

Assuming *arguendo*, however, that it was error to admit the bullet into evidence, defendant has not met his burden of showing that the jury would have reached a different verdict if the bullet had not been submitted. The bullet was not the only piece of evidence that linked defendant to the scene of the crime. Shell casings on the front porch were from defendant's .9-millimeter pistol, shotgun shells from the yard had been "worked through" the .20-gauge shotgun found in defendant's mobile home, and defendant's black Blazer was seen leaving the scene of the crime. In addition, the bullet was not the only evidence that linked defendant to the actual killing of the victim. Gregorio Maldonado testified that two different weapons were fired that night. Also, the physical evidence found at the scene supported the view that two weapons had been fired, a shotgun and a .9-millimeter pistol. The physical evidence also supported the view that it was bullets from the .9-millimeter pistol that struck the victim; the casings from the .9-millimeter pistol were found on the front porch outside the door, and expert testimony revealed that the victim had not been shot by a shotgun. Even without the admission of the bullet, the jury could have concluded that it was the .9-millimeter pistol that inflicted the deadly blows. Based on this evidence, we conclude that the jury's verdict would probably not have changed had the bullet been excluded.

For the reasons stated above, we conclude that defendant Sierra received a fair trial free of any prejudicial error.

NO ERROR.