NO. COA14-317

 NORTH CAROLINA COURT OF APPEALS

 Filed: 18 November 2014

STATE OF NORTH CAROLINA

 v. Wake County
 No. 11 CRS 226769, 11 CRS
 226773-75
ROBERT EARL SPENCE, JR.

 Appeal by defendant from judgments entered 18 June 2013 by

Judge Paul C. Ridgeway in Wake County Superior Court. Heard in

the Court of Appeals 10 September 2014.

 Attorney General Roy Cooper, by Assistant Attorney General
 Margaret A. Force, for the State.

 W. Michael Spivey, for defendant.

 ELMORE, Judge.

 Robert Earl Spence, Jr. (defendant) appeals from judgments

entered upon his convictions for four counts of first-degree

rape, four counts of first-degree sex offense, and four counts

of incest with a near relative. Defendant was sentenced to

three consecutive terms of active imprisonment each for a

minimum of 230 months and a maximum of 285 months.

 I. Facts
 -2-
 The State indicted defendant on three counts of rape, sex

offense, and incest in each of six cases (eighteen counts in

total) stemming from alleged sexual misconduct between defendant

and his daughter (“Donna1”). At trial, the State presented

evidence that defendant continually sexually abused Donna when

she was five years old until she was twelve. Donna recalled the

locations where the abuse occurred but was unable to remember

dates or time-frames. The State attempted to establish the

time-frames by establishing the years in which defendant lived

at the various locations of the alleged abuse. The approximate

time-frames established that defendant separated from his wife

in 2002, moved out of the family home and briefly lived with his

cousin, Dartanian Hinton, followed by his oldest brother, Ellis

Rodney McCoy. Defendant lived with McCoy from approximately

2003 until early 2005. Subsequently, defendant lived with his

younger brother, David Edison Spence, for the duration of 2005.

During the final months of 2005 or early in 2006, defendant

resided with ATN Hinton for about five or six months.

Thereafter, defendant married and moved into the home of his new

wife, Joann Freeman. In July 2006, defendant divorced Ms.

1
 Donna is a pseudonym used to protect the identity of the minor.
 -3-
Freeman, re-married, and moved into another house with his third

wife, Angel Spence.

 During her trial testimony, Donna became nervous, visibly

upset, and began to directly ask defendant questions about his

conduct towards her. In response, the trial court recessed

court and, over defendant’s objection, ordered that the

courtroom remain closed for the duration of Donna’s direct and

cross-examination testimony.

 At the close of all the evidence, defendant made a motion

to dismiss three of the first-degree sex offense charges that

were alleged to have occurred in 2001, 2004, and 2005 for

insufficiency of the evidence. The trial court denied

defendant’s motion, and the charges were submitted to the jury.

 While reading the jury instructions, the trial court,

without any objection by defendant, followed the pattern jury

instructions by referring to Donna as “the victim.” During

deliberations, the jury asked the trial court whether a penis

was an “object” for the purposes of “penetration” to support the

counts of first-degree sex offense. The trial court, without

any objection by defendant, answered, “the use of the word ‘any

object’ refers to parts of the human body as well as inanimate

or foreign objects. So that is the definition of the term
 -4-
‘object.’ And then under that definition the penis being a part

of the human body, that would be within the definition of an

object.”

 The jury returned with unanimous verdicts of guilty of four

counts of first-degree rape, four counts of first-degree sex

offense, and four counts of incest with a near relative.

 II. Analysis

a.) Preservation of Constitutional Issue
 Defendant first contends that the trial court erred by

violating his sixth amendment constitutional right to a public

trial when it closed the courtroom during Donna’s testimony.

The State contends that defendant failed to preserve this issue

on appeal. We disagree.

 N.C. Appellate Procedure Rule 10(a)(1) mandates that “[i]n

order to preserve an issue for appellate review, a party must

have presented to the trial court a timely request, objection,

or motion, stating the specific grounds for the ruling the party

desired the court to make if the specific grounds were not

apparent from the context.” N.C.R. App. P. 10(a)(1).

Accordingly, “where a theory argued on appeal was not raised

before the trial court, the law does not permit parties to swap

horses between courts in order to get a better mount in the

reviewing court.” State v. Ellis, 205 N.C. App. 650, 654, 696
 -5-
S.E.2d 536, 539 (2010) (citation and quotation marks omitted).

This general rule applies to constitutional questions, as

constitutional issues not raised before the trial court “will

not be considered for the first time on appeal.” Id.

 Pursuant to the sixth amendment of the United States

constitution, a criminal defendant is entitled to a “public

trial.” U.S. Const. amend. VI.

 The requirement of a public trial is for the
 benefit of the accused; that the public may
 see he is fairly dealt with and not unjustly
 condemned, and that the presence of
 interested spectators may keep his triers
 keenly alive to a sense of their
 responsibility and to the importance of
 their functions. In addition to ensuring
 that judge and prosecutor carry out their
 duties responsibly, a public trial
 encourages witnesses to come forward and
 discourages perjury.
Waller v. Georgia, 467 U.S. 39, 46, 81 L. Ed. 2d 31, 38 (1984)

(citations and quotation marks omitted).

 In order to preserve a constitutional issue for appellate

review, a defendant must voice his objection at trial such that

it is apparent from the circumstances that his objection was

based on the violation of a constitutional right. State v.

Rollins (Rollins I), ___ N.C. App. ___, ___, 729 S.E.2d 73, 76

(2012).
 -6-
 Here, the trial court ordered that bystanders in the

courtroom, who included people on defendant’s witness list,

remain outside the courtroom for the remainder of the alleged

victim’s testimony. Defendant’s attorney objected in response

to the closure of the courtroom:

 DEFENDANT’S ATTORNEY: Your Honor, just if
 your Honor could note defendant’s objection.
 People that are here that are on my witness
 list who have been seated in the audience
 haven’t contributed to this disruption and
 haven’t been making faces or gestures which
 would in any way cause the upset that the
 witness has been displaying and I object to
 them being removed, but I understand the
 Court has enormous discretion in the matter.
 I just don’t like it. . . . I’m concerned
 that the jury may feel that somehow my part
 of the audience had something to do with the
 witness’s behavior and I don’t think that’s
 the case and I wouldn’t want to let that be
 inferred or implied in the Court’s
 ruling, so if the Court could fashion some
 statement to that effect I’d be grateful.

 Before defendant cross-examined Donna, the trial court

ordered that the courtroom remain closed, and defendant objected

to the closure once again.

 TRIAL COURT: All right. I’ve considered
 whether there’s any particular reason to
 allow bystanders to be in the courtroom
 during the cross-examination and I’m
 inclined to continue the order closing the
 courtroom during the
 remainder of this witness’s testimony,
 including cross-examination, so that would
 -7-
 be for the same reasons and findings of fact
 that I made previously. That would be my
 intention. . . . [D]o you want to be heard?

 DEFENDANT’S ATTORNEY: Just an objection, but
 if I could go out for a minute and tell my
 people they don’t need to stick around.

 TRIAL COURT: Again, clarify that once she is
 off the stand they would be welcome back.

It is apparent from the context that the defense attorney’s

objections were made in direct response to the trial court’s

ruling to remove all bystanders from the courtroom—a decision

that directly implicates defendant’s constitutional right to a

public trial. Thus, we hold that defendant preserved this issue

on appeal. See State v. Comeaux, __ N.C. App. __, __, 741

S.E.2d 346, 349 (2012) review denied, __ N.C. __, 739 S.E.2d 853

(2013) (ruling that the “[d]efendant’s objection to ‘clear[ing]

the courtroom’” preserved the defendant’s argument on appeal

that his constitutional right to a public trial was violated);

see also Rollins I, __ N.C. App. at __, 729 S.E.2d at 76

(holding that the defendant preserved appellate review of an

alleged violation of his constitutional right to a public trial

“based on his contention [at trial] that ‘[c]ourt should be

open’”).

b.) Constitutional Right to a Public Trial
 -8-
 We now address the merits of defendant’s argument that the

trial court violated defendant’s constitutional right to a

public trial. For the reasons set forth below, we hold that the

trial court did not violate defendant’s constitutional right.

 “In reviewing a trial judge’s findings of fact, we are

‘strictly limited to determining whether the trial judge’s

underlying findings of fact are supported by competent evidence,

in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge’s

ultimate conclusions of law.’” State v. Williams, 362 N.C. 628,

632, 669 S.E.2d 290, 294 (2008) (quoting State v. Cooke, 306

N.C. 132, 134, 291 S.E.2d 618, 619 (1982)); see also Sisk v.

Transylvania Cmty. Hosp., Inc., 364 N.C. 172, 179, 695 S.E.2d

429, 434 (2010) (“‘[F]indings of fact made by the trial judge

are conclusive on appeal if supported by competent evidence,

even if . . . there is evidence to the contrary.’” (quoting

Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 100-01,

655 S.E.2d 362, 369 (2008))). This court reviews alleged

constitutional violations de novo. State v. Tate, 187 N.C. App.

593, 599, 653 S.E.2d 892, 897 (2007).

 “[T]he right to an open trial may give way in certain cases

to other rights or interests, such as the defendant’s right to a
 -9-
fair trial or the government’s interest in inhibiting disclosure

of sensitive information.” Waller, 467 U.S. at 45, 81 L. Ed. 2d

at 38. In accordance with this principle, N.C. Gen. Stat. § 15-

166 (2013) permits the exclusion of certain persons from the

courtroom in cases involving rape and other sexually-based

offenses:

 In the trial of cases for rape or sex
 offense or attempt to commit rape or attempt
 to commit a sex offense, the trial judge
 may, during the taking of the testimony of
 the prosecutrix, exclude from the courtroom
 all persons except the officers of the
 court, the defendant and those engaged in
 the trial of the case.

 However, when deciding whether closure of the courtroom

during a trial is appropriate, a trial court must: (1) determine

whether the party seeking the closure has advanced “an

overriding interest that is likely to be prejudiced” if the

courtroom is not closed; (2) ensure that the closure is “no

broader than necessary to protect that interest”; (3) “consider

reasonable alternatives to closing the proceeding”; and (4)

“make findings adequate to support the closure.” Waller, 467

U.S. at 48, 81 L. Ed. 2d at 39. The findings regarding the

closure must be “specific enough that a reviewing court can

determine whether the closure order was properly entered.” Id.

at 45, 81 L. Ed. 2d at 38 (citation and quotation marks
 -10-
omitted). In making its findings, “[t]he trial court’s own

observations can serve as the basis of a finding of fact as to

facts which are readily ascertainable by the trial court’s

observations of its own courtroom.” State v. Rollins (Rollins

II), __ N.C. App. __, __, 752 S.E.2d 230, 235 (2013) (citation

omitted).

 Here, the trial court originally issued oral findings of

fact in support of its decision to close the courtroom:

 THE COURT: Outside the presence of the jury,
 in my discretion I determined that it would
 be in the best interest of justice to
 exclude all bystanders from this courtroom
 while Ms. Spence continues with her
 testimony. I have no complaint about the
 way that the bystanders are conducting
 themselves. It’s simply that there are
 approximately, I would say, thirty adults,
 many of whom are friends or family members,
 who appeared at this trial that are
 obviously -- have an interest in these
 proceedings in the gallery. I’ve also
 observed that Ms. Spence is nervous and
 upset as she testifies and as essentially
 may be expected. In any event, in my
 discretion and in my judgment simply
 allowing this courtroom to be as free from
 distractions as possible would be in the
 best interest of justice, so what I’ve done
 is simply required that all bystanders
 remain outside for the remainder of this
 witness’s direct testimony. I’ll revisit
 this after we take our lunch recess and I’ll
 revisit it at the close of the direct
 testimony of this witness, but that would be
 my order at this time.
 -11-
When the trial court re-visited its ruling after the close of

the alleged victim’s direct testimony, it stated:

 TRIAL COURT: All right. I’ve -- I will say
 that since the audience members were asked
 to leave the courtroom I do think that the
 testimony has been easier to -- for the
 jurors to understand anyway. There’s been
 less crying and less nervousness, so I’m
 going to continue in my discretion to
 continue that order throughout the remainder
 of the direct examination.

 The trial court’s original findings of fact relating to its

decision to close the courtroom are supported by competent

evidence. During the alleged victim’s testimony, she exhibited

nervousness and cried, such that her testimony was difficult to

understand. She eventually became so upset that she asked

defendant directly, “[w]hy did you do this to me? Why? Why?”

The trial court determined that the numerous adult bystanders in

the courtroom, in part, contributed to the alleged victim’s

emotional state, and in order to re-establish courtroom order,

the trial court recessed the trial for a few minutes.

 Under the first Waller factor, the trial court articulated

that the overriding interest that was likely to be prejudiced

absent a courtroom closure was courtroom order, the alleged

victim’s emotional well-being, and the jury’s ability to hear

the alleged victim’s testimony. The trial court also considered
 -12-
the second Waller factor, ensuring that the closure was not too

broad, as it only ordered closure during the alleged victim’s

testimony once courtroom order was threatened and re-visited its

ruling after the lunch recess and before cross-examination.

 However, the trial court’s original order did not indicate

that it considered reasonable alternatives to the closure. As

such, the absence of findings on the third Waller factor

prevented us from conducting a proper review of the propriety of

the closure.

Therefore, we remanded this matter for the trial court to enter

a supplemental order containing supported findings of fact and

conclusions of law related to the third Waller factor. In its

supplemental order, the trial court addressed the third Waller

factor:

 10. The Court considered reasonable
 alternatives to the closure of the
 courtroom.

 11. In considering reasonable alternatives,
 having previously observed that taking a
 recess to allow the alleged victim to
 compose herself did not have any beneficial
 effect on her emotional state or the ability
 of the Court and jurors to hear and
 understand her testimony, the Court
 concluded that the taking of additional
 recesses would not likely lead to a
 different outcome.

 12. The Court considered, as an alternative
 -13-
 to closing the courtroom, arranging for the
 remote testimony of the victim via closed
 circuit television. However, the Court
 excluded that possibility because the
 alleged victim did not appear to be
 emotionally distressed by the physical
 proximity of the Defendant and a remote
 testimony arrangement would impair the
 Defendant’s rights to confront the alleged
 victim and would impair the ability of the
 jury to fully assess her credibility.
 Therefore, the Court found that closure of
 the courtroom to all nonessential personnel
 was the most reasonable alternative.

 These supplemental findings are supported by competent

evidence in light of the trial court’s own observations of the

victim and other individuals inside the courtroom.

 In sum, the trial court’s orders together considered

Donna’s young age, nature of the charges, familial relationship

with defendant, other non-essential personnel present in the

courtroom, necessity of Donna’s non-hearsay testimony, limited

time and scope of the courtroom closure, and consideration of

reasonable alternatives to closing the courtroom. Thus, the

findings were adequate to support a courtroom closure pursuant

to the fourth Waller factor. Accordingly, the trial court did

not violate defendant’s constitutional right to a public trial.

 c.) Jury Instructions

 Defendant also argues that the trial court committed plain

error by instructing the jury in a manner that permitted the
 -14-
jury to convict defendant of both first-degree rape and first-

degree sex offense based upon one act of penile vaginal

penetration. Specifically, defendant argues that “the error

occurred because the trial court erroneously instructed the jury

that a penis could be considered an ‘object’ for purposes of

establishing a sexual act by either genital or anal

penetration.” As a result, defendant contends that the jury

became confused about whether a penis was an “object” for the

purposes of “penetration” to support the counts of first-degree

sex offense. We disagree.

 Pursuant to N.C. Gen. Stat. § 15A-1443(c) (2013), “[a]

defendant is not prejudiced by the granting of relief which he

has sought or by error resulting from his own conduct.”

Accordingly, “a defendant who invites error has waived his right

to all appellate review concerning the invited error, including

plain error review.” State v. Hope, ___ N.C. App. ___, ___, 737

S.E.2d 108, 111 (2012), review denied, 366 N.C. 438, 736 S.E.2d

493 (2013) (citation and internal quotation marks omitted).

 Our Supreme Court has addressed the concept of “inviting

error” within the context of jury instructions. State v.

Sierra, 335 N.C. 753, 759-60, 440 S.E.2d 791, 795 (1994). In

Sierra, the defendant, on appeal, argued that the trial court
 -15-
should have instructed the jury on second-degree murder. Id.

At trial, however, the defendant specifically declined the trial

court’s offer to provide such an instruction on two separate

occasions. Id. Our Supreme Court held that “defendant is not

entitled to any relief and will not be heard to complain on

appeal” despite any possible error by the trial court because he

acquiesced to the trial court’s jury instructions. Id.

 Similarly, in State v. Weddington, the defendant argued to

our Supreme Court that the trial court erred by failing to

properly clarify a jury question regarding the time at which the

intent to kill must be formed for the charge of first-degree

murder. 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). At

trial, however, defendant agreed with the trial court’s decision

to merely reinstruct the jury on each element of the offense.

Id. Our Supreme Court held that “[t]he instructions given were

in conformity with the defendant’s assent and are not error.

The defendant will not be heard to complain on appeal when the

trial court has instructed adequately on the law and in a manner

requested by the defendant.” Id. (citation omitted).

 Comparable to Sierra and Weddington, the jury in the case

at bar asked whether “the penis is considered an object” for the

purposes of “penetration” for the charge of first-degree sex
 -16-
offense. In deciding how to answer the jury, the trial court

stated, in relevant part:

 TRIAL COURT: What I’m inclined to say is
 that the legal definition of an object is
 any object, inanimate or animate, so part of
 the body may be an animate object or some
 other item would be an inanimate object. The
 definitions of sexual acts have been
 provided to the jury. They include some
 specific sexual acts such as anal
 intercourse, which is penetration by the
 penis into the anus, and then rape, which is
 penetration of the vagina by the penis, so
 those are where there’s a more specific
 definition, that’s the definition that
 should be used.

 The trial court then asked defendant’s attorney about his

thoughts on the issue, and defendant’s attorney responded, “I

agree. . . . [O]r the Court can reinstruct them on that count,

just see what happens.” The trial court then responded:

 TRIAL COURT: I’m just going to read the
 definition[,] and under that definition of
 penis [sic] is a part of body and so as a
 matter of law, since the Supreme Court has
 said that any object embraces parts of the
 human body as well as inanimate or foreign
 objects, and the answer to the question is
 yes, the penis is considered an object.

 In response to the trial court’s proposed answer to the

jury question, defendant’s attorney stated, “[t]hat’s fine.”

After the trial court answered the jury’s question in the exact

manner proposed above, he asked the parties, “I didn’t go on to
 -17-
distinguish between vaginal intercourse and sexual intercourse

offense, but do either of you feel that further clarification is

needed for the jury?” Defendant’s attorney responded, “[n]o.”

 Thus, defendant’s attorney actively participated in

crafting the trial court’s response to the jury question,

overtly agreed with the trial court’s interpretation that a

penis could be considered an “object,” and denied the trial

court’s proposed clarification between vaginal intercourse and a

sexual act for purposes of a sexual offense. Accordingly, we

rule that defendant invited any error stemming from the trial

court’s instructions and dismiss this issue on appeal. See

Hope, ___ N.C. App. at ___, 737 S.E.2d at 113 (dismissing issue

on appeal because the defendant invited error by “objecting to

the correct instruction, requesting the incorrect instruction,

and by choosing to forgo a self-defense instruction”); see also

State v. Wilkinson, 344 N.C. 198, 235-36, 474 S.E.2d 375, 396

(1996) (ruling that the defendant invited error and declining to

review issue on appeal “because, as the transcript reveal[ed],

defendant consented to the manner in which the trial court gave

the instructions to the jury”).

d.) Motion to Dismiss
 Next, defendant argues that the trial court erred by

denying his motion to dismiss certain first-degree sex offense
 -18-
charges (11 CRS 226769, 11 CRS 226773 and 11 CRS 226774) for

insufficiency of the evidence. We agree.

 “This Court reviews the trial court’s denial of a motion to

dismiss de novo.” State v. Smith, 186 N.C. App. 57, 62, 650

S.E.2d 29, 33 (2007). “‘Upon defendant’s motion for dismissal,

the question for the Court is whether there is substantial

evidence (1) of each essential element of the offense charged,

or of a lesser offense included therein, and (2) of defendant’s

being the perpetrator of such offense. If so, the motion is

properly denied.’” State v. Fritsch, 351 N.C. 373, 378, 526

S.E.2d 451, 455 (quoting State v. Barnes, 334 N.C. 67, 75, 430

S.E.2d 914, 918 (1993)), cert. denied, 531 U.S. 890, 148 L. Ed.

2d 150 (2000). “Substantial evidence is such relevant evidence

as a reasonable mind might accept as adequate to support a

conclusion.” State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d

164, 169 (1980). “In making its determination, the trial court

must consider all evidence admitted, whether competent or

incompetent, in the light most favorable to the State, giving

the State the benefit of every reasonable inference and

resolving any contradictions in its favor.” State v. Rose, 339

N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied, 515 U.S.

1135, 132 L. Ed. 2d 818 (1995).
 -19-
 In relevant part, an individual is guilty of a first-degree

sex offense if the person “engages in a sexual act . . . [w]ith

a victim who is a child under the age of 13 years and the

defendant is at least 12 years old and is at least four years

older than the victim[.]” N.C. Gen. Stat. § 14-27.4(a)(1)

(2013). A “sexual act” is defined as “cunnilingus, fellatio,

analingus, or anal intercourse, but does not include vaginal

intercourse.” Importantly, a “sexual act” is also “the

penetration, however slight, by any object into the genital or

anal opening of another person’s body[.]” N.C. Gen. Stat. § 14-

27.1 (2013). An “object” for the purposes of this statute

“embrace[s] parts of the human body as well as inanimate or

foreign objects.” State v. Lucas, 302 N.C. 342, 346, 275 S.E.2d

433, 436 (1981).

 First-degree rape requires an individual to “engage[] in

vaginal intercourse . . . [w]ith a victim who is a child under

the age of 13 years and the defendant is at least 12 years old

and is at least four years older than the victim[.]” N.C. Gen.

Stat. § 14-27.2 (2013). Vaginal intercourse is defined as

“penetration, however slight, of the female sex organ by the

male sex organ.” State v. Combs, __ N.C. App. __, __, 739
 -20-
S.E.2d 584, 586 (2013) review denied, __ N.C. __, 743 S.E.2d 220

(2013).

 Because the crime of first-degree sex offense excludes

vaginal intercourse, and vaginal intercourse is a specific

element of first-degree rape that requires penile penetration, a

“sexual act” of penetration by “any object into the genital”

opening under N.C. Gen. Stat. § 14-27.4 constitutes first-degree

rape if the “object” is a penis. See State v. Leeper, 59 N.C.

App. 199, 202, 296 S.E.2d 7, 9 (1982) (holding that “[w]here one

statute deals with a subject in detail with reference to a

particular situation . . . and another statute deals with the

same subject in general and comprehensive terms[,]” the

particular statute will control “unless it clearly appears that

the General Assembly intended to make the general act

controlling in regard thereto”).

 Here, each of the first-degree sex offense indictments

subject to defendant’s motion to dismiss alleged that defendant

“unlawfully, willfully and feloniously did engage in a sex

offense with D.SP., by force and against that victim’s will.”

11 CRS 226769 alleged that the offense occurred between 1

January and 31 December of 2001, 11 CRS 226773 alleged that the

offense occurred between 1 January 2004 and 31 December 2004,
 -21-
and 11 CRS 226774 alleged that the offense occurred between 1

January 2005 and 31 December 2005.

 With regard to 11 CRS 226769, the only evidence that a sex

offense had occurred was when Donna read an entry from her

journal that chronicled her prior abuse and other witnesses

testified about statements Donna made to them prior to trial.

This evidence indicated that the sexual abuse by defendant began

in 2001 in Donna’s parents’ home when she was five or six years

old. In one particular instance, defendant penetrated Donna’s

anal opening and engaged in anal intercourse with her in a

trailer. While the State purported to use this evidence to

corroborate Donna’s testimony, it could not use the testimony

for substantive purposes. See State v. Gell, 351 N.C. 192, 204,

524 S.E.2d 332, 340 (2000) (“It is well established that . . .

prior statements admitted for corroborative purposes may not be

used as substantive evidence.”). The trial court appropriately

instructed the jury:

 Evidence has been received tending to show
 that at an earlier time a witness made a
 statement which may conflict with or be
 consistent with testimony of the witness at
 this trial. You must not consider such
 earlier statement as evidence of the truth
 of what was said at that earlier time
 because it was not made under oath at this
 trial. If you believe the earlier statement
 was made and that it conflicts with or is
 -22-
 consistent with the testimony of the witness
 at this trial you may consider this and all
 facts and circumstances bearing on the
 witness’s truthfulness in deciding whether
 you will believe or disbelieve the witness’s
 testimony.

 Although the State provided evidence of vaginal intercourse

during this time period, such conduct was sufficient to support

defendant’s first-degree rape conviction, not a first-degree sex

offense. Thus, the State failed to provide substantial evidence

of a first-degree sex offense in 2001, and the trial court erred

by denying defendant’s motion to dismiss this charge in 11 CRS

226769.

 Similarly, Donna’s in-court testimony shows that in 2004

and 2005, defendant engaged in vaginal intercourse with her on

numerous occasions. Such conduct was sufficient evidence of

first-degree rape, and defendant was convicted of such charges.

Although Donna’s journal entry and other witness testimony about

statements made by Donna before trial indicated that defendant

committed a “sexual act” through anal intercourse with Donna at

McCoy’s house between 2004 and 2005, there is no substantive

evidence that during this time period, defendant committed a

“sexual act” by way of cunnilingus, fellatio, analingus, anal

intercourse, or penetration by any object (other than a penis)

into Donna’s genital or anal opening. Leeper, supra.
 -23-
Accordingly, the State failed to provide substantial substantive

evidence of a “sexual act” for the first-degree sex offense

charges in 11 CRS 226773 and 11 CRS 226774.

 We also note that in its brief, the State points to

substantial evidence at trial to support first-degree sex

offenses occurring in 2006, but fails to cite any substantive

evidence in the record of such conduct in 2001, 2004, or 2005.

Nevertheless, the State argues that we should apply the rule of

leniency to the case at bar.

 Generally, “[t]he date given in the bill of indictment is

not an essential element of the crime charged and the fact that

the crime was in fact committed on some other date is not

fatal.” State v. Pettigrew, 204 N.C. App. 248, 253, 693 S.E.2d

698, 702 (2010) (internal citation and quotation marks omitted).

With regard to child sexual abuse cases, the courts of this

State “are lenient . . . where there are differences between the

dates alleged in the indictment and those proven at trial.”

State v. McGriff, 151 N.C. App. 631, 635, 566 S.E.2d 776, 779

(2002) (citation omitted). The rationale for this relaxed

standard is “in the interests of justice and recognizing that

young children cannot be expected to be exact regarding times

and dates, a child’s uncertainty as to time or date upon which
 -24-
the offense charged was committed goes to the weight rather than

the admissibility of the evidence.” Id. (citation and internal

quotation marks omitted). This policy of leniency applies

unless defendant “demonstrates that he was deprived of his

defense because of lack of specificity[.]” Id. (citation and

internal quotation marks omitted).

 We do not believe the rule of leniency is applicable to the

case at bar. The State mischaracterizes the issue as one of

time variance, when it is, in fact, a question of sufficiency of

the evidence. Had the State, at trial, shown that the specific

sexual offense conduct that was alleged to have occurred in

2001, 2004, and 2005 happened on a different date, the rule of

leniency would apply. However, the first-degree sexual offense

indictments contain identical language and lack specificity as

to particular conduct. The only substantive evidence of sexual-

offense conduct elicited at trial occurred in 2006, and

defendant was convicted of that offense. Thus, the State’s

theory on appeal would require us to impute the conduct in 2006

to 2001, 2004, and 2005, which would result in punishing

defendant more than once for the same conduct in violation of

the double jeopardy clause of the U.S. constitution. See State

v. Gardner, 315 N.C. 444, 454, 340 S.E.2d 701, 708 (1986)
 -25-
(“[W]hen a person is . . . convicted and sentenced for an

offense, the prosecution is prohibited from . . . sentencing him

a second time for that offense[.]”).

e.) Referring to Donna as “the victim”
 Finally, defendant argues that the trial court erred by

referring to Donna as the “alleged victim” in its opening

remarks to the jury and then repeatedly referring to her as “the

victim” in its final jury instructions. We disagree.

 Defendant concedes on appeal that he never objected to the

trial court referring to Donna as “the victim.” Thus, we review

this issue for plain error, not de novo as a statutory

violation. See State v. Phillips, ___ N.C. App. ___, ___, 742

S.E.2d 338, 341 (2013), review denied, ___ N.C. ___, 753 S.E.2d

671 (2014) and review dismissed, ___ N.C. ___, 753 S.E.2d 671

(2014) (“[W]here our courts have repeatedly stated that the use

of the word ‘victim’ in jury instructions is not an expression

of opinion, we will not allow defendant, after failing to object

at trial, to bring forth this objection on appeal, couched as a

statutory violation, and thereby obtain review as if the issue

was preserved.”). “In deciding whether a defect in the jury

instruction constitutes ‘plain error’, the appellate court must

examine the entire record and determine if the instructional

error had a probable impact on the jury’s finding of guilt.”
 -26-
State v. Richardson, 112 N.C. App. 58, 66, 434 S.E.2d 657, 663

(1993) (citation omitted).

 Pursuant to N.C. Gen. Stat. § 15A-1232, “[i]n instructing

the jury, the judge shall not express an opinion as to whether

or not a fact has been proved and shall not be required to

state, summarize or recapitulate the evidence, or to explain the

application of the law to the evidence.” N.C. Gen. Stat. § 15A-

1232 (2013).

 Defendant relies on State v. Walston, ___ N.C. App. ___,

___, 747 S.E.2d 720, 728 (2013), review allowed, writ allowed,

___ N.C. ___, 753 S.E.2d 666 (2014) and review denied, ___ N.C.

___, 753 S.E.2d 667 (2014), in support of his argument that the

trial court erred in referring to Donna as “the victim,” as it

was an expression of an improper opinion to the jury. We are

unpersuaded.

 In Walston, the trial court, over defendant’s repeated

objections, used the word “the victim” instead of “the alleged

victim” in its jury instructions, which followed the pattern

jury instructions. Id. at ___, 747 S.E. 2d at 727. This Court

reviewed the appeal de novo because the defendant alleged a

statutory violation of N.C. Gen. Stat. § 15A-1232. Id. This

Court held that the trial court committed prejudicial error
 -27-
because “[t]he issue of whether sexual offenses occurred and

whether [the complainants] were ‘victims’ were issues of fact

for the jury to decide[,]” defendant was convicted of offenses

which contained the word “victim” in the jury instructions, and

the pattern jury instructions did not absolve the trial court

from giving correct instructions to the jury. Id. at ___, 747

S.E.2d at 727-28.

 We acknowledge that the case at bar shares some factual

similarities to Walston. Most importantly, however, this case

is distinguishable from Walston because we are reviewing this

issue on appeal for plain error, not under a de novo standard of

review. On this basis, defendant’s argument fails because “it

is clear from case law that the use of the term ‘victim’ in

reference to prosecuting witnesses does not constitute plain

error when used in instructions[.]” State v. Henderson, 155

N.C. App. 719, 722, 574 S.E.2d 700, 703 (2003) (emphasis added);

State v. Carrigan, 161 N.C. App. 256, 263, 589 S.E.2d 134, 139

(2003); State v. Hatfield, 128 N.C. App. 294, 299, 495 S.E.2d

163, 166 (1998); Richardson, 112 N.C. App. at 67, 434 S.E.2d at

663. Moreover, upon review of the evidence, we cannot conclude

that the use of the words “the victim” had a probable impact on

the jury’s finding of guilt. Donna testified to constant sexual
 -28-
abuse by defendant for approximately eight years, and her

testimony was corroborated by her journal and other witnesses

who testified as to her prior statements to them. Additionally,

the trial court instructed the jury:

 The law requires the presiding judge to be
 impartial. You should not infer from
 anything that I have done or said that the
 evidence is to be believed or disbelieved,
 that a fact has been proved, or what your
 findings ought to be. It is your duty to
 find the facts and to render a verdict
 reflecting the truth.

 Thus, we hold that the trial court did not commit plain

error by referring to Donna as “the victim” during jury

instructions.

 III. Conclusion

 In sum, we hold that the trial court did not err by 1.)

closing the courtroom during Donna’s testimony, 2.) answering a

jury question about whether a penis could be considered an

“object,” or 3.) referring to Donna as “the victim” during jury

instructions. However, the trial court erred by denying

defendant’s motion to dismiss the first-degree sex offense

charges in 11 CRS 226769, 11 CRS 226773 and 11 CRS 226774.

Thus, we vacate those sex-offense convictions and remand for a

new sentencing hearing.

 No error, in part, vacated and remanded, in part.
 -29-
Judges CALABRIA and STEPHENS concur.